PEOPLE v KOZYRA

Docket No. 172275. Submitted May 21, 1996, at Detroit. Decided October 11, 1996, at 9:35 A.M. Leave to appeal sought.

Andrew Kozyra was convicted by a jury in the Recorder's Court of Detroit, Denise Page Hood, J., of perjury, the charge arising out of statements made under oath by the defendant in a deposition in a probate court proceeding concerning the validity of the will of Lawrence Jones. The defendant, Wesley Roberts, and Ronald Vannoy were charged in a grand jury indictment with uttering and publishing a false will, perjury, conspiracy to utter and publish a false will, and conspiracy to commit perjury. Vannoy had admitted to probate the purported will of Jones that had been drafted by Roberts, had been signed by the defendant as a witness, and had left Jones' estate to Vannoy. Jones' signature had been forged. Vannoy, who was a witness for the prosecution at the defendant's trial, testified that when the scheme to get Jones' estate became known to the prosecutor and the Attorney General, and the three of them had been called to testify at a probate court proceeding, the three decided that they would testify that Jones had signed the will in his hospital room on November 12, 1986, and that the defendant had signed the will at his office after that visit, despite the fact that the attestation on the will was dated November 11, 1986. In his deposition in the probate proceedings, the defendant testified that Roberts had told him that Jones had signed the will in the hospital. The defendant further testified that he had not been present when Jones allegedly signed the will and that at Roberts' request he had signed his attestation of the will in his office after the November 12 visit to Jones' hospital room. The jury acquitted the defendant of the uttering and publishing and the conspiracy charges. The trial court denied the defendant's posttrial motion for a directed verdict of acquittal. The defendant appealed.

The Court of Appeals *held*:

1. The elements of perjury are: the administration to the defendant of an oath authorized by law, an issue or cause to which the facts sworn are material, and wilfully false statements or testimony regarding those facts. The prosecution cannot satisfy its burden with respect to proving a wilfully false statement or testimony simply by contradicting the defendant's sworn statement, but must

present evidence of circumstances bringing strong corroboration of the contradiction.

2. Ronald Vannoy's direct testimony demonstrated that the defendant lied in his deposition concerning when he witnessed Jones' will. That testimony was corroborated by the testimony of Vannoy's wife, the evidence concerning the manner of questioning undertaken by the defendant as the attorney for Ronald Vannoy in the Vannoys' divorce proceedings, and the false will itself. The evidence demonstrates the falsity of the defendant's testimony at the probate proceedings. Accordingly, sufficient evidence corroborated Ronald Vannoy's testimony regarding the defendant's perjury beyond a reasonable doubt.

3. The defendant's false testimony was material because it plainly could have affected the outcome of the probate proceedings and the Attorney General's investigation.

4. The defendant's claim that the trial court erred in admitting his probate deposition into evidence is controlled by the law of the case. That question was considered and decided in a prior appeal. *People v Kozyra*, unpublished opinion per curiam of the Court of Appeals, issued April 15, 1992 (Docket No. 138504). Because the defendant neither sought a rehearing nor sought leave to appeal that decision to the Supreme Court, the prior opinion of the Court of Appeals that held that the deposition was admissible is the law of the case and controlling.

Affirmed.

1. PERJURY — ELEMENTS OF CRIME — EVIDENCE — CORROBORATION.

The elements of perjury are: the administration to the defendant of an oath authorized by law, an issue or cause to which the facts sworn are material, and wilfully false statements or testimony regarding those facts; the prosecution cannot satisfy its burden with respect to proving a wilfully false statement or testimony simply by contradicting the defendant's sworn statement, but must present evidence of circumstances bringing strong corroboration of the contradiction (MCL 750.423; MSA 28.665).

2. PERJURY — MATERIALITY.

A defendant's false statement or testimony must be material in order to support a conviction of perjury; a materially false statement is one that could have affected the course or outcome of the proceeding.

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting

Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Karen M. Woodside*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *David A. Moran*), for the defendant on appeal.

Before: CORRIGAN, P.J., and MacKENZIE and P. J. CLULO,* JJ.

CORRIGAN, P.J. Defendant, a former attorney, appeals by right his conviction following a thirteen-day jury trial of one count of perjury, MCL 750.423; MSA 28.665, arising from a citizens' grand jury indictment. Defendant also was indicted, along with two others, on various charges involving conspiracy to utter and publish a forged will, MCL 750.157(a); MSA 28.354(1), MCL 750.249; MSA 28.446, uttering and publishing a forged will, MCL 750.249; MSA 28.446, and conspiracy to commit perjury, MCL 750.157(a); MSA 28.354(1), MCL 750.423; MSA 28.665, but the petit jury acquitted him of most of these counts.[1] Codefendant Wesley Roberts, a former attorney and defendant's employer, was convicted by a separately empaneled jury of conspiracy to utter and publish a forged will, uttering and publishing a forged will, conspiracy to commit perjury, and perjury. Coconspirator Ronald Vannoy testified as a prosecution witness after pleading guilty of perjury and of uttering and publishing a forged will.[2] We affirm.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] The court granted a directed verdict on count seven, charging that defendant committed perjury regarding certain alleged statements of Jones.

[2] The other five charges against Vannoy were dismissed consistent with the terms of his plea agreement with the prosecutor's office.

I. UNDERLYING FACTS

This prosecution arose from a complicated series of events surrounding an attempt to probate the forged will of Lawrence Jones and to cover up the crime after the investigation began. The proofs established that defendant did not profit from the fraudulent will scheme, but committed perjury as part of the effort to cover up the crime.

On October 29, 1986, Ann Jones, Lawrence Jones' wife, died. While arranging for her funeral at the Wysocki Funeral Home, Lawrence Jones met Ronald Vannoy, the funeral home manager. Vannoy befriended Jones and visited Jones' apartment several times. During this time, Vannoy discovered that Jones, a wealthy man, had no living heirs, no will, and no plans for the devolution of his assets.

Vannoy referred Jones to codefendant Roberts for legal advice regarding estate planning. Roberts then drafted a power of attorney and a proposed will, leaving Jones' entire estate to Vannoy. At that time, defendant was employed as an associate attorney in Roberts' law firm. Although admitted to the bar in 1985, defendant had worked for Roberts as a law clerk since 1982. About twenty-five percent of defendant's work in Roberts' firm involved probate cases.

On November 11, 1986, just eight days after his wife's funeral, Jones, who was eighty years old, fell ill and entered Henry Ford Hospital in Detroit. He died there on November 15, 1986, from cardiac arrest. Vannoy and defendant first visited the hospital on November 11 to ask Jones to sign the power of attorney and the will prepared by Roberts that provided that Vannoy would inherit Jones' estate. Jones refused to sign either document, apparently stating

that he wanted his estate to go to charities of Vannoy's choice, apart from $1,000 he specifically designated for Children's Hospital. The next day, November 12, 1986, the coconspirators, Vannoy, Roberts, and defendant, visited Jones in his hospital room. Jones again failed to sign either the power of attorney or the will conveying his entire estate to Vannoy.

Jones died on November 15, 1986, without having signed the will that Roberts had prepared. After Jones' death, Vannoy conspired with Roberts to forge Jones' signature on the will that left Jones' entire estate to Vannoy. The forged will had no provision for charitable bequests. Vannoy then filed the forged will in the probate court on December 2, 1986. He and Roberts were to split the proceeds of the estate between them. Defendant did not share in the financial windfall.

In April 1987, at the time divorce proceedings were pending, Vannoy's estranged wife, Rosemary, exposed her husband's role in the forged will scheme to the Wayne County prosecutor. Rosemary Vannoy's testimony established that after Vannoy learned of Jones' death, he immediately contacted Roberts. When she asked Vannoy if they were going to be rich, he told her to "shut up" because the papers had not been signed.

In a separate investigation in August 1987, the Attorney General's office independently challenged Jones' will because the Attorney General had not been notified, as required by statute, that a will had been offered for probate involving a deceased person who has no heirs. MCL 700.316(c); MSA 27.5316(c). The Wayne County Probate Court ordered Roberts and defendant to testify regarding the circumstances

surrounding the signing of the will. The perjury charge of which defendant stands convicted resulted from his false testimony at his deposition on August 25, 1987.

Count eight of the grand jury indictment charging defendant provided:

> The Grand Jury charges that Andrew J. Kozyra, on August 25, 1987, in the City of Detroit, being a person of whom an oath was required by law, did willfully swear falsely before John F. O'Sullivan, Notary Public, on a material matter for which said oath was required, to-wit: in an inquiry into the validity of the will of Lawrence Jones, deceased; that he, Andrew J. Kozyra, signed the alleged will of Lawrence Jones as a witness on the same day that he had visited with Lawrence Jones in a hospital room, and after it had purportedly been signed by Lawrence Jones, and before the death of Lawrence Jones, which statement was false, contrary to MCL 750.423 [MSA 28.665].[3]

In August and September 1987, Vannoy, Roberts, and defendant testified by deposition in the probate court proceedings. Roberts falsely testified that Jones had signed the will during their second hospital visit. Defendant testified that Roberts had told him that Jones had signed the will in the hospital. He claimed he had not been present when Jones allegedly signed the will, although he had been present when Roberts discussed the provisions of the will with Jones. Defendant falsely testified that at Roberts' request he had attested the will after the second hospital visit. Defendant's witness attestation on the fraudulent will

---

[3] The original count eight read "on the same day that he spoke with." This count was amended at trial to reflect that defendant Kozyra did not actually speak with Lawrence Jones that day in the hospital.

is dated November 11, the date of the alleged first visit to the hospital.

At trial, Vannoy, as a cooperating witness, testified that he met with defendant and Roberts on several occasions before the probate court depositions to plan their cover-up story. During the one or two meetings that defendant had attended, the three men agreed to testify falsely that Jones had signed the will in the hospital during their second visit and that defendant had signed the will after Roberts returned the will to the office. Vannoy directly testified that defendant had been present at several of these meetings and had been well aware of the agreed-upon cover-up story. Vannoy also testified that he had not testified about the true facts during the probate depositions.

### II. SUFFICIENCY OF THE EVIDENCE

On appeal, defendant Kozyra first challenges the sufficiency of the evidence of perjury. In considering this issue, we view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992). After reviewing this voluminous record, we conclude that a reasonable factfinder could find that the elements of perjury had been established beyond a reasonable doubt.

The elements of perjury are: (1) the administration to the defendant of an oath authorized by law, by competent authority; (2) an issue or cause to which the facts sworn are material; and (3) wilfully false

statements or testimony regarding those facts. MCL 750.423; MSA 28.665; *People v Forbush*, 170 Mich App 294, 301; 427 NW2d 622 (1988). Because defendant swore an oath during the probate proceeding, the first element is satisfied. Defendant challenges the sufficiency of proofs regarding the second element. He denies the materiality of the facts to which he swore. With respect to the third element, the prosecution was obligated to prove that the allegedly perjurious statement is false. The prosecution cannot satisfy its burden simply by contradicting the defendant's sworn statement. Rather, the prosecution must present "evidence of circumstances bringing strong corroboration of the contradiction." *People v Cash*, 388 Mich 153, 162; 200 NW2d 83 (1972); see also *People v Honeyman*, 215 Mich App 687; 546 NW2d 719 (1996).

In this case, Vannoy's direct testimony demonstrated that defendant had lied in his deposition concerning when he had witnessed Jones' will. Vannoy testified that he, Roberts, and defendant had met many times in anticipation of the probate court depositions challenging the validity of Jones' will. Vannoy further testified that the three men had discussed their projected false testimony during these meetings. Specifically, Vannoy testified that all three coconspirators had agreed to testify falsely that Jones had signed the will in the hospital and that defendant had signed the will in the office after the second hospital visit. Defendant, Vannoy, and Roberts then executed the cover-up story. Both Roberts' and defendant's probate court deposition testimony reflect that they acted in accordance with the planned cover-up. Asked when defendant had witnessed the will, Roberts had stated, "It was done in the office after we

returned either that evening or it may have been the next morning, I don't recall." Defendant had stated, "When I signed this document, I was at the office, at my office" later on the same day of the second hospital visit, November 12, 1986, and outside Jones' presence. The proofs in this lengthy trial corroborated Vannoy's testimony in many ways.

Rosemary Vannoy corroborated Ronald Vannoy's testimony regarding the fraud by describing Vannoy's excited utterances immediately after he had learned of Jones' death from Ford Hospital officials. He told her that "the papers had not been signed" when she had asked whether they would be rich. Both Wesley and Jean Roberts and the Vannoys met at the London Chop House shortly after Jones' death. They discussed details of the scheme on that occasion. Two handwriting experts also testified that Jones' signature was forged. Other live witnesses corroborated various aspects of Vannoy's testimony.

Vannoy's testimony regarding defendant's role was circumstantially corroborated by defendant's conduct at Vannoy's divorce deposition on August 5, 1987. Defendant had acted as Vannoy's attorney during that proceeding. Defendant had asked certain questions of Vannoy that directly contradicted defendant's August 25 testimony in the probate deposition and independently helped to demonstrate defendant's knowledge of the planned perjury. Although defendant testified concerning Vannoy's role as beneficiary of Jones' estate in the probate proceedings, defendant aided Vannoy on August 5 in contending he was to take nothing from Jones. When Rosemary Vannoy's attorney began questioning Ronald Vannoy about Jones' will, defendant had interrupted and had offered to

clarify Vannoy's apparent confusion concerning Jones' will and the disposition of the money. His questions were consistent with the coconspirators' concocted story. Vannoy denied receiving any money. In fact, Vannoy and Roberts had by then split Jones' estate, and Vannoy had used Jones' money to start a florist business. Defendant assisted, through his questions, in hiding the truth.

Defendant had not asked any questions concerning the copy of Jones' will that Mrs. Vannoy's attorney presented at the divorce deposition. Her attorney had read a provision of that will that gave all the money to Vannoy with no mention of charities. If defendant had been unaware of the concocted story at that point, it is fair to infer that he would have questioned the apparent discrepancy regarding the disposition of Jones' money. Instead, defendant had elicited answers from Vannoy supporting the cover-up.

Additionally, the prosecution introduced the false will itself, which was dated November 11, 1986. That same date appears on the specific page bearing defendant's signature. The physical evidence itself directly contradicts defendant's false testimony during the probate deposition that he signed the will at Roberts' office after seeing Jones for a second time earlier that day in the hospital.

Defendant testified on his own behalf, contending that he had no role in the scheme to forge Jones' will. He claimed that his deposition testimony was entirely true; he contended that Jones' signature was already on the will when he signed it. The jury thus had two starkly opposed versions of the truth before it. They credited the prosecution witnesses and rejected defendant's testimony.

The evidence demonstrates the falsity of defendant's testimony at the probate proceedings. Accordingly, sufficient evidence corroborated Vannoy's testimony regarding defendant's perjury, and specifically defendant's wilfully false testimony, beyond a reasonable doubt.

### III. MATERIALITY OF FACTS

We reject defendant's claim that the issue to which he swore was not material and that the trial court erred in denying his postjudgment motion for a directed verdict because his deposition testimony was not material to the probate court proceeding.

One of the essential elements of perjury is that the issue or cause to which the defendant swears is material. *Forbush, supra* at 301. For purposes of a perjury prosecution, a statement is material if it could have affected the course or outcome of the proceeding. *People v Jeske*, 128 Mich App 596, 603; 341 NW2d 778 (1983). Defendant contends that his testimony showed that the will was invalid, so it could not have affected the outcome of the proceeding. We disagree.

Defendant's testimony that he witnessed the will the day of his second visit to the hospital was material. The investigation considered not only whether the will was improperly witnessed, but also the validity of the will itself. If defendant's testimony was false, then defendant's testimony could have affected the outcome of the Attorney General's investigation. Had defendant testified regarding the true state of affairs, the forged will would have been revealed instantly. Defendant's false testimony was material because it plainly could have affected the outcome of

the proceedings. Thus, the trial court correctly denied his motion for a directed verdict.

## IV. ADMISSION OF DEFENDANT'S DEPOSITION TESTIMONY

Next, defendant contends that the trial court erred in admitting his probate court deposition. Defendant alleges that his probate court testimony should have been suppressed as compelled testimony because the probate court erred in overriding his invocation of his Fifth Amendment privilege. This argument is without merit. In *People v Kozyra*, unpublished opinion per curiam of the Court of Appeals, issued April 15, 1992 (Docket No. 138504), this Court held that defendant waived any Fifth Amendment claim regarding the introduction of his probate court deposition in his criminal trial.

Defendant now asks this Court to reexamine its earlier ruling and to hold that the deposition testimony was inadmissible. We decline this invitation. Under the law of the case doctrine, an appellate court's determination of law will not be differently decided on a subsequent appeal in the same case if the facts remain materially the same. *People v Whisenant*, 384 Mich 693; 187 NW2d 229 (1971). If a litigant claims error in the first pronouncement, the right of redress rests in a higher tribunal. *Id.* at 702. In this case, defendant's only option is an application for leave to our Supreme Court.

Defendant argues, however, that the law of the case doctrine should not apply because this Court's reasoning in its earlier decision was flawed. We reject this contention. Having failed to seek rehearing or further appeals, defendant cannot now challenge our

colleagues' earlier decision. Defendant is not entitled to relief on this issue.

Affirmed.