PEOPLE v ORTIZ (AFTER SECOND REMAND)

Docket No. 192779. Submitted April 10, 1997, at Detroit. Decided July 15, 1997, at 9:00 A.M. Leave to appeal sought.

Juan E. Ortiz was charged in the Recorder's Court for the City of Detroit with possession of more than twenty-five grams but less than fifty grams of cocaine, assault with intent to commit murder, and possession of a firearm during the commission of a felony. The court, Wendy M. Baxter, J., denied the defendant's motions to suppress the evidence or for a hearing to determine whether the search warrant had been executed properly under the knock-and-announce statute, MCL 780.656; MSA 28.1259(6). The court, George W. Crockett, III, then entered an order staying the proceedings pending the defendant's interlocutory appeal from the denial of the pretrial motions. The Court of Appeals, in an unpublished order entered January 19, 1993 (Docket No. 156860), remanded the matter for a hearing pursuant to *People v Walker (On Rehearing)*, 374 Mich 331 (1965). The Court of Appeals denied the defendant's motion for rehearing in an unpublished order entered March 22, 1993 (Docket No. 156860). The Supreme Court denied leave to appeal and a motion for reconsideration. 442 Mich 922 (1993). On remand, the trial court, George W. Crockett, III, conducted a bench trial, convicted the defendant of possession of more than twenty-five grams but less than fifty grams of cocaine, and sentenced him to lifetime probation. The defendant appealed and the Court of Appeals, WHITE, P.J., and BANDSTRA and W. P. CYNAR, JJ., in an unpublished opinion per curiam, issued June 6, 1995 (Docket No. 174128), remanded for an evidentiary hearing regarding whether the search warrant had been executed properly. The Court of Appeals denied the prosecutor's motion for rehearing in an unpublished order entered August 3, 1995 (Docket No. 174128). After an evidentiary hearing on second remand, the trial court, George W. Crockett, III, granted the defendant's motion to suppress the evidence, set aside the conviction, and dismissed the case. The prosecutor appealed.

After second remand, the Court of Appeals *held*:

1. The knock-and-announce statute requires a police officer attempting to execute a search warrant regarding a dwelling to proclaim the officer's presence and purpose in a manner reasonably

calculated to provide notice to the occupants under the circumstances. It is not necessary that the inhabitants of a dwelling actually hear the officer's announcement, as long as the announcement was reasonably calculated to provide notice under the circumstances. Here, the trial court did not err in finding that the notice given by the police was not reasonably calculated to provide notice to the occupants under the circumstances and was therefore inadequate.

2. The trial court properly found that the defendant's porch had been secured in a way so as to make it a part of his living quarters and that the defendant had a reasonable expectation of privacy from governmental intrusion therein. The court did not err in finding the police violated the knock-and-announce statute by breaking down the porch door without providing the occupants proper notice.

3. The prosecutor did not preserve for appellate review the argument that because the police did not actually search the house until approximately an hour after they broke down the porch door, any violation of the knock-and-announce statute was harmless error.

4. The prosecutor's argument that the Court of Appeals erred in its opinion after remand in finding that the defendant was entitled to an evidentiary hearing is barred by the law of the case doctrine.

5. There were no exigent circumstances that would justify noncompliance with the knock-and-announce statute. The conduct of the police in this case violates the Fourth Amendment standard of reasonableness.

Affirmed.

MURPHY, J., dissenting, stated that the trial court erred in ruling that the police violated the knock-and-announce statute and in suppressing the evidence seized. Here, any resultant taint from the violation of the statute was purged before the actual seizure of the evidence. The time and intervening circumstances between the initial entry and the seizure of the evidence clearly favor a purging of the taint of any illegality, and the purpose and flagrancy of the illegality was not so great as to mandate a contrary holding. The defendant's conviction should be reinstated.

1. SEARCHES AND SEIZURES — EXECUTING SEARCH WARRANTS — BREAKING DOORS AND WINDOWS.

The statute governing the breaking of doors and windows in the execution of a search warrant requires a person attempting to execute a search warrant to proclaim the person's presence and purpose in a manner reasonably calculated to provide notice to the dwelling's

occupants under the circumstances; it is not necessary that the occupants actually hear the person's announcement as long as the announcement was reasonably calculated to provide notice under the circumstances; factors to be considered are whether the announcement was made with sufficient volume for an average person inside the dwelling to hear and the amount of time between the announcement and a subsequent forcible entry (MCL 780.656; MSA 28.1259[6]).

2. SEARCHES AND SEIZURES — KNOCK-AND-ANNOUNCE STATUTE.

Evidence seized by police officers in executing a search warrant may be subject to the exclusionary rule when the method of entry employed violates the knock-and-announce statute and the Fourth Amendment's standard of reasonableness; strict compliance with the statute is excused where the police have a basis to conclude that evidence will be destroyed or a reason to believe that compliance with the statutory requirements would be a useless gesture (US Const, Am IV; MCL 780.656; MSA 28.1259[6]).

3. SEARCHES AND SEIZURES — KNOCK-AND-ANNOUNCE STATUTE — EXCEPTIONS.

The Fourth Amendment does not permit a blanket exception to the knock-and-announce requirement regarding the execution of search warrants for dwellings for an entire category of criminal activity such as felony drug investigations; the fact that such investigations frequently may present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case (US Const, Am IV; MCL 780.656; MSA 28.1259[6]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, *John D. O'Hair*, Prosecuting Attorney, *Timothy A. Baughman*, Chief of Research, Training, and Appeals, and *Douglas P. Dwyer*, Assistant Prosecuting Attorney, for the people.

*Craig A. Daly, P.C.* (by *Craig A. Daly*), for the defendant.

AFTER SECOND REMAND

Before: SAWYER, P.J., and MURPHY and CAVANAGH, JJ.

CAVANAGH, J. The prosecutor appeals as of right the trial court order on second remand setting aside defendant's conviction of possession of more than twenty-five grams but less than fifty grams of cocaine, MCL 333.7403(2)(a)(iv); MSA 14.15(7403)(2)(a)(iv), on the basis that a search warrant had been executed improperly. We affirm.

On June 23, 1992, the police attempted to execute a search warrant at defendant's home. After the police broke down the door leading into the enclosed porch, defendant fired two shots from inside the house. During the subsequent search of defendant's house, the police found cocaine. Defendant was arrested and charged with possession of more than twenty-five grams but less than fifty grams of cocaine, assault with intent to commit murder, MCL 750.83; MSA 28.278, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2).

At a hearing on September 4, 1992, defendant moved to suppress the evidence seized pursuant to the search warrant, or, in the alternative, requested that a hearing be held to determine whether the search warrant had been executed properly under the knock-and-announce statute, MCL 780.656; MSA 28.1259(6). In an order dated that same day, Judge Wendy Baxter denied the motion.

Subsequently, Judge George W. Crockett, III, was assigned to conduct defendant's bench trial. Judge Crockett issued an order staying proceedings pending an interlocutory appeal of the denial of defendant's pretrial motions. On January 19, 1993, this Court issued an unpublished order remanding the case for a

*Walker*[1] hearing but denying defendant's application with regard to all other issues because the panel was not persuaded of the need for immediate appellate review. (Docket No. 156860). On March 22, 1993, this Court, in an unpublished order, denied defendant's motion for rehearing. (Docket No. 156860). On May 28, 1993, the Supreme Court denied defendant's application for leave to appeal. 442 Mich 922 (1993). On July 30, 1993, the Supreme Court denied defendant's motion for reconsideration. *Id.*

Following a bench trial on remand, defendant was convicted of possession of more than twenty-five grams but less than fifty grams of cocaine. The trial court sentenced defendant to lifetime probation. Defendant appealed the conviction as of right. This Court, WHITE, P.J., and BANDSTRA and W. P. CYNAR, JJ., remanded for an evidentiary hearing regarding whether the search warrant had been executed properly. *People v Ortiz (After Remand),* unpublished opinion per curiam of the Court of Appeals, issued June 6, 1995 (Docket No. 174128). The prosecutor's motion for rehearing was denied in an unpublished order entered August 3, 1995. (Docket No. 174128).

At the evidentiary hearing on second remand, the parties stipulated the admission of the trial testimony of five witnesses: Lois Bettin, Anjanette Myers, Carlos Grace, Paul C. Smith, and Sherrill Kaatz. In addition, defendant and Officer Daniel Dupuis testified at the hearing.

Bettin testified that she lives next door to defendant. On June 23, 1992, Bettin was sitting in her living room, which is adjacent to defendant's driveway. Bet-

---

[1] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

tin heard a noise that sounded like the slamming of a car door. Before hearing this noise, Bettin did not hear the police identify themselves or state that they had a search warrant. Upon looking out her window, Bettin observed several policemen crouching down around the side of defendant's house. Bettin did not hear any gunshots.

Myers stated that she lives across the street from defendant. On June 23, 1992, Myers heard a "loud boom noise." The noise was not preceded by anyone saying "police" or "search warrant." After hearing the noise, Myers went to the window and saw police at the side of defendant's house. Myers denied hearing any gunshots before the noise.

Grace testified that he lives three houses down from defendant. On June 23, 1992, he was standing outside, six houses away from defendant's house, when he saw a van pull up in front of defendant's house. Grace then saw two officers run to defendant's door "real fast." Grace heard a loud noise and saw the police hit defendant's door with a large object. Grace did not hear the police announce their presence before he heard the noise. Subsequently, Grace heard a second noise and saw the police leave defendant's porch and take cover.

Smith testified that he lived two houses down from defendant. At the time in question, Smith was standing in his doorway looking for his children. Smith observed a blue van stop in front of defendant's house. Three or four men jumped out, ran to defendant's door, and struck it with an object. Smith never heard the men identify themselves as police officers or state that they had a search warrant.

Kaatz testified that she was inside defendant's house on June 23, 1992. While sitting at the dining room table, Kaatz heard a loud bang coming from defendant's porch. Before hearing the bang, Kaatz did not hear anyone say "police" or "search warrant." Following the bang, Kaatz heard gunshots coming from inside the house. After the shots were fired, Kaatz heard the police announce that they had a search warrant.

Defendant testified that on the evening in question, he was talking with Kaatz in his house. The radio and television were not on, and it was quiet in the house. Suddenly, defendant heard a loud noise that sounded like a bomb or an explosion. Defendant stated that it had been his experience that when he was in the dining room, he could hear when people knocked on his porch door, and that when a person on his front porch yelled, he could hear it. Defendant did not hear anyone knock or call out before the noise occurred on the evening in question.

Defendant stated that his porch is enclosed by wood, steel beams, and smoked glass. The door from the porch to the driveway is a solid wood door. The porch door is always kept locked.

Officer Dupuis testified that he works in the narcotics division of the Detroit Police Department. On June 23, 1992, he approached the door to an enclosed porch at defendant's house with several other officers. Dupuis knocked on the door and stated that he was a police officer and had a search warrant. After waiting ten to fifteen seconds, Dupuis forced open the door with a sixty-pound battering ram. Before he reached the inner door of the porch, gunshots were fired, causing the officers to retreat. On

cross-examination, Dupuis admitted that he had heard no sounds from inside the house that led him to believe that evidence was being destroyed or someone was trying to escape.

After all the testimony had been heard, the trial court stated:

> I think one of the rules of statutory construction is that the language of the legislature in creating a statute is to be given its ordinary meaning, ordinary understanding. The legislature did use the term announce. And Webster's third, *Webster's New World Dictionary of the American Language, Second College Edition*, defines announce as to declare publicly, give notice of formally, proclaim, to say, or tell, to make known the arrival of, to make known through the senses, among other things.
>
> The statute does not say to attempt to make known. It says to announce. And if five persons within earshot and in varying positions could not hear an announcement made, as testified to, it wasn't an announcement.
>
> \*     \*     \*
>
> No, I think if their presence was not made known to the Defendant until his door had been forced, the statute has not been complied with.

The trial court then granted defendant's motion to suppress the evidence and set aside defendant's conviction. Subsequently, the trial court dismissed the case. The prosecutor appeals.

I

The prosecutor argues that the trial court erred in interpreting MCL 780.656; MSA 28.1259(6), the statute governing the breaking of doors and windows in the execution of a search warrant. The statute provides:

The officer to whom a warrant is directed, or any person assisting him, may break any outer or inner door or window of a house or building, or anything therein, in order to execute the warrant, if, after notice of his authority and purpose, he is refused admittance, or when necessary to liberate himself or any person assisting him in execution of the warrant. [MCL 780.656; MSA 28.1259(6).]

This statute is commonly referred to as the "knock-and-announce" statute. See *People v Asher*, 203 Mich App 621, 623; 513 NW2d 144 (1994), lv den 445 Mich 927 (1994), cert den 515 US 1102 (1995); *People v Zuccarini*, 172 Mich App 11, 17; 431 NW2d 446 (1988).

On appeal, we review de novo questions of law regarding statutory interpretation. *People v Bobek*, 217 Mich App 524, 528; 553 NW2d 18 (1996). Our goal in interpreting statutes is to ascertain the intent of the Legislature. *People v Burton*, 219 Mich App 278, 286; 556 NW2d 201 (1996). The first criterion in determining the Legislature's intent is the specific language of the statute. If the plain and ordinary meaning of the language is clear, judicial construction is normally neither permitted nor necessary. *People v Cohen*, 217 Mich App 75, 79; 551 NW2d 191 (1996).

The prosecutor argues that the trial court erred in focusing on the meaning of the word "announce," because that word does not appear in the statute. The trial court was apparently relying on MCL 764.21; MSA 28.880, the knock-and-announce statute governing *arrests*.[2] The text of MCL 764.21; MSA 28.880

---

[2] Likewise, in this Court's prior opinion in this case, the panel stated that defendant was entitled to an evidentiary hearing regarding whether MCL 764.21; MSA 28.880 had been violated. However, the panel went on to cite *People v Polidori*, 190 Mich App 673; 476 NW2d 482 (1991), lv den 439 Mich 918 (1992), cert den 506 US 905 (1992), a case that discusses only MCL 780.656; MSA 28.1259(6). We therefore conclude that the panel's

contains the word "announcing,"[3] while MCL 780.656; MSA 28.1259(6) does not.

We agree with the prosecutor that the trial court erred in concentrating on the word "announce," which is not contained in the text of MCL 780.656; MSA 28.1259(6). However, we conclude that the trial court's findings indicate that the police did not comply with the requirements of MCL 780.656; MSA 28.1259(6). Where the trial court reaches the right result for the wrong reason, this Court will not reverse. *People v Brake*, 208 Mich App 233, 242, n 2; 527 NW2d 56 (1994).

In interpreting a statute, a court should look to the object of the statute and the harm it is designed to remedy and apply a reasonable construction that best accomplishes the purpose of the statute. *People v Adair*, 452 Mich 473, 479-480; 550 NW2d 505 (1996). The plain language of the statute indicates that its purpose is to ensure that before a search warrant is executed, the police communicate to the occupants of a dwelling that they are present and why. The requirement that officers identify themselves and state their authority and purpose before entering a

---

reference to MCL 764.21; MSA 28.880 was an inadvertent error. We believe, and both parties acknowledge, that MCL 780.656; MSA 28.1259(6) governs this case.

[3] MCL 764.21; MSA 28.880 provides:

A private person, when making an arrest for a felony committed in his or her presence, or a peace officer or federal law enforcement officer, when making an arrest with a warrant or when making a felony arrest without a warrant as authorized by law, may break open an inner or outer door of a building in which the person to be arrested is located or is reasonably believed to be located if, after announcing his or her purpose, he or she is refused admittance.

private residence has its roots in the Fourth Amendment. *People v Polidori*, 190 Mich App 673, 676; 476 NW2d 482 (1991), lv den 439 Mich 918 (1992), cert den 506 US 905 (1992). The Fourth Amendment, in turn, was based in part on the common-law knock-and-announce rule, under which a law enforcement officer was required to notify a party of his presence and authority, and was permitted to break open the door only in cases where entry was refused. *Wilson v Arkansas*, 514 US 927, 931-934; 115 S Ct 1914; 131 L Ed 2d 976 (1995). "[T]he common-law rule was justified in part by the belief that announcement generally would avoid 'the destruction or breaking of any house . . . by which great damage and inconvenience might ensue.'" *Id.* at 935-936, quoting *Semayne's Case*, 5 Co Rep 91a, 91b; 77 Eng Rep 194, 196 (KB, 1603). However, the courts recognized that in certain circumstances announcement should not be required. See *Wilson, supra* at 933-936.

Under the plain language of MCL 780.656; MSA 28.1259(6), before breaking doors or windows, a person executing a search warrant must provide "notice of his authority and purpose." The prosecutor argues that the statute does not require that the occupants of a dwelling actually *receive* the proffered notice. Thus, the issue presented in this case is what constitutes proper notice. According to Black's Law Dictionary (6th ed), "notice" means "information, an advice, or written warning, in more or less formal shape, intended to apprise a person of some proceeding in which his interests are involved, or informing him of some fact which it is his right to know and the duty of the notifying party to communicate."

We hold that the "knock-and-announce" statute requires a person attempting to execute a search warrant to proclaim his presence and purpose in a manner reasonably calculated to provide notice to the occupants under the circumstances. In order to comply with the statute, it is not necessary that the inhabitants of a dwelling actually hear the person's announcement, as long as the announcement was reasonably calculated to provide notice under the circumstances. Factors that indicate whether an officer's announcement was reasonably calculated to provide notice under the circumstances include whether the announcement was made with sufficient volume for an average person inside to hear and the time between the announcement and a subsequent forcible entry. See *People v Harvey*, 38 Mich App 39, 43; 195 NW2d 773 (1972); *People v Doane*, 33 Mich App 579, 583; 190 NW2d 259 (1971), rev'd on other grounds 387 Mich 608; 198 NW2d 292 (1972). Thus, the police cannot satisfy the statute simply by mumbling "Open up—police" before breaking down the door, but a defendant cannot succeed in suppressing evidence merely by claiming that he did not hear an otherwise proper attempt by the police to notify him of their presence and purpose.

In the instant case, the trial court found that "five persons within earshot and in varying positions could not hear" the police announce their presence and state that they possessed a warrant to search defendant's house. A trial court's findings of fact following a suppression hearing will not be disturbed by an appellate court unless the findings are clearly erroneous. *People v LoCicero*, 453 Mich 496, 500; 556 NW2d 498 (1996). The prosecutor argues that the defense

witnesses are not credible; however, questions regarding the credibility of the witnesses are for the trier of fact. *People v Velasquez*, 189 Mich App 14, 16; 472 NW2d 289 (1991). After reviewing the record, we cannot conclude that the trial court clearly erred in finding that the notice given by the police was not reasonably calculated to provide notice to the occupants under the circumstances and was therefore inadequate.

II

Next, the prosecutor argues that the trial court erred in finding a violation of the knock-and-announce statute because the police broke down the door to defendant's porch, rather than the door to his living quarters. The prosecutor relies on *Harvey, supra.* In *Harvey,* this Court found that the police had complied with the statute. After knocking on the outer screen door of a porch and receiving no response, the police kicked in that door, then knocked on the inner door and shouted "This is the sheriff's department, this is a raid." After waiting a few seconds and getting no reaction, the police forced open the inner door. *Harvey, supra* at 41, 43. This Court explained, "Though the officers failed to comply with the provisions of the pertinent statute prior to breaking in the outer door, a screen door, on a screened-in porch, this is irrelevant because the provisions of the statute were met prior to entry into the living quarters." *Id.* at 43. The prosecutor argues that in the present case, unlike *Harvey,* the police did not have the opportunity to comply with the statute because shots were fired immediately after they broke down the outer door.

We find that *Harvey* is distinguishable from the present case. In *Harvey*, the police did not identify themselves until after kicking in a screen door and entering a screened porch. See *id.* at 41. In contrast, in the present case, the outer door was a wooden door and the porch was completely enclosed. Moreover, the porch door in *Harvey* could be kicked in, while opening the door to defendant's porch required a sixty-pound battering ram. We conclude from these facts that defendant had secured his porch in such a way as to make it part of his "living quarters," see *id.* at 43, and therefore defendant had a reasonable expectation of privacy from unreasonable governmental intrusion, see *People v Malone*, 177 Mich App 393, 401; 442 NW2d 658 (1989). Thus, the trial court did not err in finding that the police violated the knock-and-announce statute by breaking down the door to defendant's porch without providing the occupants with proper notice.

III

Next, the prosecutor argues that because the police did not actually search defendant's home until approximately an hour after they broke down the door, any violation of the knock-and-announce statute was harmless error. However, because the prosecutor did not make this argument at the evidentiary hearing, it is not preserved for appellate review. See *People v Coon*, 200 Mich App 244, 247; 503 NW2d 746 (1993). Moreover, although no evidence was presented at the evidentiary hearing regarding the prosecutor's claim that the search took place an hour after the police broke down the door, it seems reasonable to assume that any delay was caused by the

fact that defendant fired several shots at the
unknown intruders who were breaking into his
home.[4] Because defendant's actions and the resultant
delay were likely a direct result of the violation of the
knock-and-announce statute, we cannot conclude the
delay excuses the police's failure to comply with the
statute.

IV

Next, the prosecutor argues that this Court erred in
finding that defendant was entitled to an evidentiary
hearing. At the outset, we conclude that this argu-
ment is barred by the law of the case doctrine. Under
the law of the case doctrine, an appellate court's
determination of law will not be differently decided
on a subsequent appeal in the same case if the facts
remain materially the same. *People v Kozyra*, 219
Mich App 422, 433; 556 NW2d 512 (1996). Accord-
ingly, we could not overrule the prior panel's finding
that defendant was entitled to an evidentiary hearing
even if we considered it to be erroneous, which is not
the case.[5]

---

[4] In acquitting defendant of the charge of assault with intent to murder,
the trial court stated: "The manner and circumstances of the firing in this
Court's view do not warrant charging the Defendant with any criminal
intent in the firing of that weapon."

[5] In fact, we do not find the prior panel's decision to be erroneous. The
prosecutor contends that defendant was not denied an evidentiary hearing
before trial. However, at a September 4, 1992, hearing regarding defend-
ant's pretrial motions, Judge Baxter acknowledged defendant's desire to
address the issue whether the police complied with the knock-and-
announce statute before entering defendant's house. Although Judge Bax-
ter never specifically denied defendant's motion for an evidentiary hear-
ing, the lower court record contains an order dated September 4, 1992,
denying defendant's motion to suppress evidence. Accordingly, defend-
ant's motion was effectively denied.

The prosecutor also argues that the prior panel erred in failing to
address Judge Crockett's discussion of the knock-and-announce issue at

V

Finally, the prosecutor argues that application of the exclusionary rule is too harsh a remedy. In *Polidori, supra* at 677, this Court held that when the method of entry violates the knock-and-announce statute, the exclusionary rule may come into play if the Fourth Amendment standard of reasonableness is also offended. Strict compliance with the statute is excused where the police have a basis to conclude that evidence will be destroyed or where the police have reason to believe that compliance with the statutory requirements would be a useless gesture. *Id.*

The prosecutor claims that in *Wilson, supra,* which came after this Court's decision in *Polidori,* the United States Supreme Court held that exclusion is not a constitutionally compelled remedy where the unreasonableness of the search stems from the failure to knock and announce before entering. We disagree. In *Wilson,* the Court specifically stated that "the common-law knock and announce principle forms a part of the Fourth Amendment reasonableness inquiry." *Wilson, supra* at 930. The Court specifically declined to address whether failure to comply with the knock-and-announce principle mandated application of the exclusionary rule because the issue had not been addressed by the lower court and was not within the narrow issue on which the Court had granted certiorari. See *id.* at 937, n 4. We decline to view the Court's

---

trial. However, while in the interest of thoroughness the panel might have noted that five witnesses testified at trial regarding the knock-and-announce issue, the panel nevertheless did not err because Judge Crockett specifically declined to address the question whether the statute had been violated. The prosecutor acknowledged this fact at the evidentiary hearing.

refusal to address the application of the exclusionary rule to violations of the knock-and-announce principle as an indication of support for the prosecutor's argument.

The prosecutor further maintains that the exclusionary rule should not be applied because the police actions were justified by exigent circumstances. The prosecutor first argues that "in situations involving a search warrant for a situs involving the narcotic trade, exigent circumstances are the rule." However, this position was recently rejected by the United States Supreme Court in *Richards v Wisconsin*, 520 US ___; 117 S Ct 1416; 137 L Ed 2d 615 (1997). In *Richards*, a unanimous Court held that the Fourth Amendment does not permit a blanket exception to the knock-and-announce requirement for an entire category of criminal activity, specifically felony drug investigations. 117 S Ct 1418. The Court stated:

> [T]he fact that felony drug investigations may frequently present circumstances warranting a no-knock entry cannot remove from the neutral scrutiny of a reviewing court the reasonableness of the police decision not to knock and announce in a particular case. Instead, in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement. [117 S Ct 1421.]

The prosecutor also argues that specific exigent circumstances existed in the present case, citing the fact that gunshots were fired and the possibility that defendant would destroy evidence. We find no merit to this argument. As already discussed, it is undisputed that defendant fired the gunshots only after the police broke down the outer door. Thus, there is no

evidence of any exigent circumstances that would justify noncompliance with the knock-and-announce statute. Furthermore, Dupuis testified that nothing occurred during the execution of the search warrant that led him to believe that evidence was being destroyed. We find that the conduct of the police in this case violates the Fourth Amendment standard of reasonableness. See *Polidori, supra* at 677. Accordingly, we conclude that the trial court did not err in excluding the evidence seized from defendant' house.

Affirmed.

SAWYER, P.J., concurred.

MURPHY, J. (*dissenting*). I respectfully dissent. In my opinion, the trial court clearly erred in ruling that the officers violated the knock-and-announce statute and suppressing the evidence seized.

The prosecution relies in part on *People v Harvey*, 38 Mich App 39; 195 NW2d 773 (1972). In *Harvey*, this Court held that whether officers complied with the knock-and-announce statute before breaking an outer, locked, screen door on a screened-in porch, was "irrelevant because the provisions of the statute were met prior to entry into the living quarters." *Id.* at 43. In this case, the prosecution argues that compliance with the knock-and-announce statute was irrelevant because the officers only broke the outer door of a porch before hearing gunshots from inside the home and aborting their entry; the officers did not break the door to defendant's "living quarters." While I consider this to be a strong argument, I do not think we need to come to a conclusion and decide this issue on the basis of *Harvey* because, even assuming that the knock-and-announce statute was violated and the

officers' entry onto the porch was illegal, I am of the opinion that any resultant taint from the illegality was sufficiently purged before the actual seizure of evidence.

The majority dismisses this claim, in part because it was not argued below. However, because this issue is decisive of the outcome, I feel review is proper, especially in light of the fact that defendant has already been afforded a trial and the attendant constitutional rights and protections. Also, the majority states that there was no evidence presented at the hearing on remand to support the prosecutor's claim on appeal. However, the record at the hearing consisted not only of live testimony at the hearing, but the parties stipulated the admission of the trial transcripts. When the hearing testimony is supplemented with the trial testimony, there is ample evidence with which to evaluate the prosecutor's claim on appeal.

As stated by our Supreme Court:

> The exclusionary rule forbids the use of direct and indirect evidence acquired from governmental misconduct, such as evidence from an illegal police search.
>
> Three exceptions to the exclusionary rule have emerged: the independent source exception, the attenuation exception, and the inevitable discovery exception. [*People v LoCicero*, 453 Mich 496, 508; 556 NW2d 498 (1996) (citations omitted).]

To determine whether exclusion is proper, we must "evaluate the circumstances of this case in the light of the policy served by the exclusionary rule . . . ." *Brown v Illinois*, 422 US 590, 604; 95 S Ct 2254; 45 L Ed 2d 416 (1975).

"The rule is calculated to prevent, not to repair. Its pur-
pose is to deter—to compel respect for the constitutional
guaranty in the only effectively available way—by removing
the incentive to disregard it" But "[d]espite its broad deter-
rent purpose, the exclusionary rule has never been inter-
preted to proscribe the use of illegally seized evidence in all
proceedings or against all persons. [*Id.* at 599-600 (citations
omitted).]

When a defendant claims that evidence should be
suppressed as a result of unlawful government mis-
conduct, the appropriate inquiry is "whether that evi-
dence was procured by an exploitation of the illegal-
ity or, instead, by means sufficiently distinguishable
to be purged of the primary taint." *People v Lambert*,
174 Mich App 610, 617; 436 NW2d 699 (1989);[1] see
also *Wong Sun v United States*, 371 US 471, 488; 83 S
Ct 407; 9 L Ed 2d 441 (1963). Factors that assist in
determining whether an exploitation of an illegality
has occurred include: the temporal proximity
between the illegality and the seizure, the presence of
intervening circumstances, and the purpose and fla-
grancy of the illegality. See *Brown, supra* at 603-604
(utilizing the *Wong Sun* test to determine if a confes-
sion need be suppressed as a result of an illegal
arrest).

In the case at bar, testimony revealed that over an
hour passed between the time of the initial entry onto
the porch and the time the officers finally entered
defendant's home to execute the warrant. Immedi-

---

[1] The majority states that the delay and intervening circumstances
between the initial entry and the seizure of evidence were a "direct result
of the violation of the knock-and-announce statute." *Ante* at 482. How-
ever, such a "but for" test was specifically rejected in favor of a determi-
nation regarding whether there has been an exploitation of the primary
illegality. See *Lambert, supra* at 617.

ately after entry onto the porch was made, shots were
fired from inside defendant's home, the officers
retreated from, and assumed positions outside, the
porch. For the next hour, the officers waited, occa-
sionally using a bullhorn to announce their continued
presence and ask defendant to surrender. Eventually,
defendant and another occupant of the home surren-
dered. It was at this time the officers finally entered
the home, initially to secure the premises, and exe-
cuted the search.[2]

With regard to the purpose and flagrancy of the ille-
gality, it was a question of fact regarding whether
there actually was an illegality in the first place in
light of the fact that some testimony did indicate that
the officers complied with the knock-and-announce
statute and because the door initially entered led to a
porch and not to living quarters. However, even
accepting the testimony of the witnesses who stated
that the officers did not comply with the statute, I do
not consider the purpose and flagrancy of the viola-

---

[2] While the parties' arguments focus on the initial entry of the outer,
porch door, and defendant does not argue that the officers needed to
knock and announce immediately before their second entry, which
occurred after the standoff ended and defendant surrendered, I will
briefly address the issue. In my opinion, knocking and announcing imme-
diately before the second entry was not necessary. By the time of that
entry, knocking and announcing would have been a useless formality
because the occupants of the home had surrendered. In addition, even if
the officers did not know that the occupants who surrendered were the
only occupants (which they were), in my opinion, their surrender, along
with the intervening time and circumstances, as well as the knowledge of
the officers of potential danger upon entry, and the knowledge of any
remaining occupants of the officers' presence and intent to enter, created
a circumstance that excused compliance. In other words, on the facts of
this case, the officers' entrance without knocking and announcing was
reasonable, and because the officers had a warrant, the seizure of the evi-
dence was proper. Therefore, the sole issue we must address is whether
any illegality of the initial entry was sufficient to taint the second entry
and the seizure of the evidence.

tion to rise to such a level that it irreparably tainted the seizure of the evidence in light of the other countervailing factors that favor purging the taint of the illegal entry. The officers were executing a drug warrant, and physical violence and evidence destruction frequently occur during the execution of such warrants. While there was no testimony or evidence on the record in this case that indicates that the officers had a "reasonable suspicion" of such risk, which would have justified a "no-knock" entry, *Richards v Wisconsin*, 520 US ___; 117 S Ct 1416; 137 L Ed 2d 615 (1997), such risks were nonetheless legitimate, and with the benefit of hindsight, proper concerns. In addition, the officers knew they were initially entering a porch, as opposed to living quarters, a fact, which in my opinion, mitigates the flagrancy of, if not totally precludes, any violation of the knock-and-announce statute.

In my opinion, it would certainly be a stretch to say that the officers exploited their initial entry to obtain the evidence seized. If anything, they were placed at a disadvantage by their initial entry. The standoff gave defendant an opportunity to destroy evidence; an opportunity that defendant utilized. The time and intervening circumstances between the initial entry and the seizure of the evidence clearly favor a purging of the taint of any illegality, and the purpose and flagrancy of the illegality was not so great as to mandate a contrary holding. Furthermore, I do not think that such a holding would provide an incentive to disregard the knock-and-announce statute. I highly doubt that officers executing a search warrant would rather choose the route taken in the case at bar than comply with the knock-and-announce statute.

I would reverse and remand to reinstate defendant's conviction.