PEOPLE v SHEPHERD

Docket No. 247945. Submitted August 4, 2004, at Lansing. Decided September 28, 2004, at 9:10 A.M. Leave to appeal sought.

Nina J. Shepherd was convicted by a jury in the Midland Circuit Court of perjury in a court proceeding, MCL 750.422, in part on the basis of testimonial hearsay on which the defendant had no prior opportunity for cross-examination. The court, Thomas L. Ludington, J., admitted the transcript of the guilty plea of her boyfriend, Bobby Butters, to a charge of subornation of perjury, admitted jail guard testimony relating to overhearing Mr. Butters's comments to relatives visiting him in jail, and admitted a letter that Mr. Butters wrote to the defendant before his trial for fleeing and eluding and for assault, listing twenty-one questions and answers regarding the events related to those allegations. The defendant appealed the admission of those items of evidence.

The Court of Appeals *held*:

1. Given that Mr. Butters was unavailable as a witness in the defendant's trial on the basis of his Fifth Amendment right against self-incrimination and that the defendant had no prior opportunity for cross-examination in Mr. Butters's plea hearing, the transcript of Mr. Butters's plea was improperly admitted as contrary to the Confrontation Clause of US Const, Am VI. An error of that sort, while not requiring automatic reversal, is still a constitutional error. Because the transcript established an element of the charged offense, the falsity of the defendant's previous testimony, its admission was not harmless error and warrants reversal of her conviction.

2. The testimony of jail guards relating to statements made by Mr. Butters to visiting relatives, which statements supported the defendant's conviction of perjury, was properly admitted by the trial court. Because the statements also related to Mr. Butters's guilt, they were statements against his penal interest, MRE 804(b)(3), that bore sufficient indicia of reliability to satisfy Confrontation Clause concerns, were voluntary and spontaneous, and were admissible, nontestimonial evidence.

3. A letter that Mr. Butters wrote to the defendant before his trial for fleeing and eluding and for assault, listing twenty-one

questions and answers regarding the events related to those allegations, closely correlated with the defendant's testimony. Although the defendant claimed that correlation was because the statements in the letter were true, the letter equally incriminates both the defendant and Mr. Butters in a plan to present false testimony at his trial. There was a sufficient indicium of reliability for admission of the letter into evidence.

Reversed and remanded.

HOEKSTRA, P.J., dissenting, stated that the trial court erred in admitting into evidence the plea transcript of accomplice Bobby Butters's guilty plea, but the error was harmless and does not require reversal. Because there was other credible evidence of the falsity of the defendant's statement, the jury would have found the defendant guilty of perjury absent the erroneous admission of the plea transcript.

EVIDENCE — CONSTITUTIONAL LAW — CONFRONTATION CLAUSE — HEARSAY.

The confrontation clause bars the admission of testimonial statements by a witness against an accused where the witness is unavailable to testify in court at the accused's trial and the accused had no opportunity to cross-examine the witness in the proceeding in which the witness gave testimony (US Const, Am VI).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Norman W. Donker*, Prosecuting Attorney, and *Michael T. Garner*, Assistant Prosecuting Attorney, for the people.

*Joseph L. Stewart* for the defendant.

Before: HOEKSTRA, P.J., and COOPER and KELLY, JJ.

COOPER, J. Defendant Nina Jillaine Shepherd appeals as of right her jury trial conviction of perjury in a court proceeding.[1] The trial court sentenced defendant to ten months in jail, followed by six months of electronic monitoring and twenty-four months of probation. We reverse defendant's conviction, as the trial court im-

[1] MCL 750.422.

properly admitted testimonial hearsay upon which defendant had no prior opportunity for cross-examination in violation of the Confrontation Clause of the Sixth Amendment. This appeal is being decided without oral argument pursuant to MCR 7.214(E).

## I. BACKGROUND

The charges against defendant arose from her sworn testimony given in the trial of her boyfriend, Bobby Butters, for third-degree fleeing and eluding[2] and assault with a dangerous weapon.[3] Defendant testified that she and Mr. Butters left the incident location in defendant's station wagon and, consequently, Mr. Butters could not have been the driver of the pickup truck that was used to flee from police and was involved in the assault. Despite defendant's testimony, Mr. Butters was convicted. Thereafter, the prosecution charged defendant with perjury, claiming that her testimony was false.

## II. ADMISSION OF HEARSAY EVIDENCE

On appeal, defendant challenges the admission of three pieces of evidence as inadmissible hearsay. We review a trial court's decision to admit evidence for an abuse of discretion and underlying questions of law de novo.[4]

### A. TRANSCRIPT OF MR. BUTTERS'S GUILTY PLEA

Defendant first challenges the admission of the transcript of Mr. Butters's guilty plea to subornation of

---

[2] MCL 750.479a(3).

[3] MCL 750.82.

[4] *People v Washington*, 468 Mich 667, 670-671; 664 NW2d 203 (2003).

perjury. Following his convictions for fleeing and eluding and assault, Mr. Butters was charged as a codefendant with subornation of perjury for soliciting defendant to testify that she and Mr. Butters left the incident location together in defendant's station wagon. Mr. Butters entered a guilty plea to this charge in a separate proceeding.[5] In light of the United States Supreme Court's recent decision in *Crawford v Washington*,[6] we find that the transcript is testimonial evidence upon which defendant had no prior opportunity for cross-examination and, therefore, was improperly admitted.

Pursuant to the Confrontation Clause of the Sixth Amendment, an accused has the right "to be confronted with the witnesses against him . . . ."[7] The right to confront one's accusers is a fundamental right based on an English common-law tradition. In criminal matters, evidence was presented through live testimony subject to adversarial testing.[8] From the sixteenth to eighteenth centuries, however, the civil law practices of using ex parte examinations against an accused seeped into the criminal sphere.[9] In 1791, when the Confrontation Clause was included in the Sixth Amendment, the confrontation right was understood to encompass the common-law tradition—in order to admit a testimo-

---

[5] Mr. Butters was deemed unavailable as a witness in defendant's trial as he had applied for leave to appeal his subornation of perjury conviction and thus had a Fifth Amendment privilege against self-incrimination. US Const, Am V; Const 1963, art 1, § 17.

[6] *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004).

[7] US Const, Am 6.

[8] *Crawford, supra* at 1359.

[9] See *id.* at 1359-1362 (noting that ex parte examinations and interrogatories were frequently admitted against an accused by statute, court practice, or government abuse, resulting in objections to the lack of confrontation).

nial statement against an accused, the witness must be unavailable and the accused must have had a prior opportunity for cross-examination.[10] To remain faithful to this original understanding, the prior opportunity to cross-examine—confrontation—must exist before testimonial hearsay evidence may be admitted.[11]

In 1980, however, the Supreme Court rendered its decision in *Ohio v Roberts*.[12] Pursuant to *Roberts*, the statement of an unavailable witness may be admitted into evidence when it bears sufficient "indicia of reliability."[13] The statement at issue in *Roberts* was the preliminary examination testimony of a witness who had since disappeared. Interestingly, the Court found the statement to be reliable because the defendant had the *opportunity* to cross-examine the witness at the examination and availed himself of that opportunity.[14] As the states began applying *Roberts*, however, the "indicia of reliability" test turned out to be rather *unreliable*, as well as unpredictable. Whether a factor made evidence more or less reliable was in the eye of the beholder.[15] Furthermore, the Court noted in *Crawford*:

> The unpardonable vice of the *Roberts* test, however, is not its unpredictability, but its demonstrated capacity to admit core testimonial statements that the Confrontation Clause plainly meant to exclude. . . .
>
> To add insult to injury, some of the courts that admit untested testimonial statements find reliability in the very factors that *make* the statements testimonial.[16]

---

[10] *Id.* at 1363, 1365-1366.

[11] *Id.* at 1366-1368.

[12] *Ohio v Roberts*, 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980).

[13] *Id.* at 65-66.

[14] *Id.* at 73.

[15] *Crawford, supra* at 1371.

[16] *Id.* at 1371-1372 (emphasis in original).

In determining that the Confrontation Clause bars the admission of testimonial statements of witnesses against the accused unavailable to testify in court when there was no prior opportunity for cross-examination, the Supreme Court returned to "the essence of the confrontation right."[17] "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy *constitutional* demands is the one the Constitution actually prescribes: confrontation."[18] In rejecting the *Roberts* "indicia of reliability" test, the Court found: "Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence or to amorphous notions of 'reliability.' "[19] "Dispensing with confrontation because testimony is obviously reliable is akin to dispensing with jury trial because a defendant is obviously guilty. This is not what the Sixth Amendment prescribes."[20]

Although prior cases failed to explicitly make this distinction between testimonial and nontestimonial evidence, it is clear that testimonial evidence from an unavailable declarant was never intended to be deemed reliable where the defendant had no prior opportunity for cross-examination.[21] Prior to *Roberts*, the Supreme Court regularly held that testimonial evidence would

---

[17] Richard D. Friedman, *Adjusting to* Crawford: *High court decision restores confrontation clause protection*, 19 Crim Just, no 2, pp 4, 5, 13 (2004). Professor Friedman wrote an amicus curiae brief in *Crawford* and served as second chair to petitioner's counsel. See also *Crawford, supra* at 1359-1364.

[18] *Crawford, supra* at 1374 (emphasis added).

[19] *Id.* at 1370.

[20] *Id.* at 1371; *People v McPherson*, 263 Mich App 124; 687 NW2d 370 (2004) (emphasis deleted).

[21] Dying declarations have historically been an exception to this rule. See *Crawford, supra* at 1367 n 6.

only be admissible where the declarant was unavailable and the defendant had a prior opportunity for cross-examination.[22]

The trial court's admission of the transcript of Mr. Butters's guilty plea was clearly improper. Mr. Butters's testimony made under oath in court is an obvious example of testimonial evidence—Mr. Butters bore testimony against himself implicating defendant in his crime of subornation of perjury. Defendant was absent from that proceeding and was given no opportunity for cross-examination. Furthermore, the transcript was presented to prove the truth of the matter asserted—that defendant gave false testimony pursuant to Mr. Butters's solicitation of these particular statements. As such, its admission violated defendant's Sixth Amendment right to confront the witnesses against her.

Our review of preserved, constitutional error is limited to the following analysis as outlined by the Michigan Supreme Court:

> First, a court must ask if the error is a "structural defect[ ] in the constitution of the trial mechanism, which def[ies] analysis by 'harmless-error' standards." These errors include that total deprivation of the right to trial counsel, an impartial judge, excluding grand jury members who are the same race as defendant, denial of the right to self-representation, denial of the right to a public trial, and a constitutionally improper reasonable doubt instruction. Upon finding any of these errors, a court must automatically reverse.

---

[22] See *id.* at 1365, citing *Mattox v United States*, 156 US 237, 241-244; 15 S Ct 337; 39 L Ed 409 (1895), and at 1367, citing *Mancusi v Stubbs*, 408 US 204, 213-216; 92 S Ct 2308; 33 L Ed 2d 293 (1972); *California v Green*, 399 US 149, 165-168; 90 S Ct 1930; 26 L Ed 2d 489 (1970); *Pointer v Texas*, 380 US 400, 406-408; 85 S Ct 1065; 13 L Ed 2d 923 (1965), superseded on other grounds *United States v Silverman*, 945 F2d 1337 (CA 6, 1991); *Kirby v United States*, 174 US 47, 55-56, 60; 19 S Ct 574; 43 L Ed 890 (1899).

At the other end of the spectrum, however, are trial errors that "occur[ ] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt." This requires the beneficiary of the error to prove, and the court to determine, beyond a reasonable doubt that there is no " 'reasonable possibility that the evidence complained of might have contributed to the conviction.' "[23]

While the admission of testimonial hearsay evidence in violation of the Confrontation Clause does not rise to the level of structural error requiring *automatic* reversal, it is still constitutional error. When quantitatively assessed in this case, there is clearly more than a reasonable probability that the transcript of Mr. Butters's guilty plea to subornation of perjury contributed to defendant's conviction for perjury. Furthermore, it is not our role to second-guess the jury and determine a defendant's guilt.[24] It is not at all clear that a rational jury would have found defendant guilty beyond a rea-

___

[23] *People v Anderson (After Remand)*, 446 Mich 392, 404-406; 521 NW2d 538 (1994), quoting *Arizona v Fulminante*, 499 US 279, 307-309; 111 S Ct 1246; 113 L Ed 2d 302 (1991), and *Chapman v California*, 386 US 18, 23; 87 S Ct 824; 17 L Ed 2d 705 (1967). The dissent implies that *Neder v United States*, 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999), overrules this analysis in *Anderson*. While *Neder* mandates a reviewing court to ask: "Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?", a careful reading of that case reveals that the Court was concerned with unnecessarily " 'setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial.' " *Id.* at 18, 19, quoting *Chapman, supra* at 22. A careful reading of *Neder* also indicates that the Court cautions that *Chapman* is virtually unattainable. However, the improper admission of Mr. Butters's guilty plea was not a small error or defect. The statement actually established an element of the charged offense.

[24] *Neder, supra* at 19.

sonable doubt absent the improperly admitted state-
ment. In fact, this transcript established an element of
the charged offense—the falsity of defendant's previous
testimony.[25] Accordingly, its admission was not harm-
less error and warrants reversal.

### B. JAILHOUSE STATEMENTS TO RELATIVES

Defendant also challenges the admission of state-
ments that Mr. Butters made to relatives visiting him in
jail following his trial. Jail guards overheard the con-
versation and testified about its content over defen-
dant's objection. Mr. Butters's statements were consis-
tent with him having been the driver of the fleeing
pickup truck and inconsistent with defendant's testi-
mony at his trial.

In a motion in limine held prior to trial,[26] defendant
maintained that the overheard statements were inad-
missible hearsay. The trial court disagreed, finding that
the statements were voluntary and spontaneous, and,
therefore, were not the result of law enforcement inter-
rogation, and were spoken without a suggestion of any
motive to lie or distort the truth. Consequently, the trial
court ruled that the statements had sufficient indicia of
reliability and that they were admissible at trial.

---

[25] Perjury is defined as "a willfully false statement regarding any
matter or thing, if an oath is authorized or required." *People v Lively*, 470
Mich 248, 253; 680 NW2d 878 (2004) (emphasis deleted), citing MCL
750.423. To establish that the statement is false, the prosecutor is
required to present strong corroborating evidence to that effect, and not
merely contradict the defendant's testimony. *People v Kozyra*, 219 Mich
App 422, 429; 556 NW2d 512 (1996), citing *People v Cash*, 388 Mich 153,
162; 200 NW2d 83 (1972), and *People v Honeyman*, 215 Mich App 687;
546 NW2d 719 (1996).

[26] The trial judge recused himself from deciding the motion in limine,
although he did not recuse himself from the trial; an assigned judge heard
the motion.

The *Crawford* Court intentionally "[left] for another day any effort to spell out a comprehensive definition of 'testimonial.' "[27] However, the opinion did provide the following guidance:

> The text of the Confrontation Clause ... applies to "witnesses" against the accused—in other words, those who "bear testimony." 1 N. Webster, An American Dictionary of the English Language (1828). "Testimony," in turn, is typically "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not. The constitutional text, like the history underlying the common-law right of confrontation, thus reflects an especially acute concern with a specific type of out-of-court statement.
>
> Various formulations of this core class of "testimonial" statements exist: "ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *White v Illinois*, 502 US 346, 365; 112 S Ct 736; 116 L Ed 2d 848 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as Amici Curiae 3. These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise

---

[27] *Crawford, supra* at 1374.

articulation, some statements qualify under any definition
—for example, ex parte testimony at a preliminary hear-
ing.[28]

In the only two cases where our Court has addressed
*Crawford*, the inquiry into the testimonial nature of the
statements has been limited at best. In *People v Geno*,
this Court determined, with little analysis of *Crawford*,
that a statement made by a child complainant to the
executive director of the Children's Assessment Center
was not testimonial.[29] Focusing solely on the language
"ex parte in-court testimony or its functional equiva-
lent," this Court found that a statement made in
response to a question posed by a nongovernmental
employee, albeit one with significant investigatory
power, was nontestimonial.[30] In *People v McPherson*,
this Court noted *Crawford*'s failure to comprehensively
define "testimonial."[31] However, the statement admit-
ted against the defendant in that case was clearly
testimonial, "even under a narrow standard," as it was
the statement of a coparticipant elicited through police
interrogation.[32]

In the instant case, the statements overheard by the
jail guards were also clearly not testimonial. Mr. Butters
was speaking to relatives, not to the guards, and made
spontaneous, unprompted comments regarding his role
in the fleeing and eluding and assault. Even under the
broadest definition of "testimonial," it is unlikely that

[28] *Id.* at 1364 (emphasis deleted).

[29] *People v Geno*, 261 Mich App 624, 631; 683 NW2d 687 (2004).

[30] *Id.*, citing *Crawford, supra* at 1364, 1374 (emphasis deleted).

[31] *McPherson, supra* at 132.

[32] *Id.*, quoting *Crawford, supra* at 1364. The admission of the state-
ment did not warrant reversal, however, as it was introduced on cross-
examination to impeach the defendant's testimony that he was unaware
of his coparticipant's statement, rather than to establish the truth of that
statement.

Mr. Butters would have reasonably believed that the statements would be available for use at a later trial.

If not testimonial, Mr. Butters's statements were properly admitted as statements against his penal interest pursuant to MRE 804(b)(3).[33] *Crawford* left *Roberts* intact regarding the admissibility of nontestimonial statements. The admission of Mr. Butters's statements as substantive evidence does not violate the Confrontation Clause if the prosecution can establish that he was unavailable as a witness and that the statements bore adequate indicia of reliability, or if the statements fell within a firmly rooted hearsay exception.[34] As we have already determined that Mr. Butters was unavailable as a witness, we must determine if his statements bore adequate indicia of reliability.

> In evaluating whether a statement against penal interest that inculpates a person in addition to the declarant bears sufficient indicia of reliability to allow it to be admitted as substantive evidence against the other person, courts must evaluate the circumstances surrounding the making of the statement as well as its content.
>
> The presence of the following factors would favor admission of such a statement: whether the statement was (1) voluntarily given, (2) made contemporaneously with the events referenced, (3) made to family, friends, colleagues, or confederates—that is, to someone to whom the declarant would likely speak the truth, and (4) uttered spontaneously at the initiation of the declarant and without prompting or inquiry by the listener.
>
> On the other hand, the presence of the following factors would favor a finding of inadmissibility: whether the statement (1) was made to law enforcement officers or at the prompting or inquiry of the listener, (2) minimizes the role or responsibility of the declarant or shifts blame to the

---

[33] *Washington, supra* at 671.

[34] *Id.* at 671-672.

accomplice, (3) was made to avenge the declarant or to curry favor, and (4) whether the declarant had a motive to lie or distort the truth.

Courts should also consider any other circumstance bearing on the reliability of the statement at issue. While the foregoing factors are not exclusive, and the presence or absence of a particular factor is not decisive, the totality of the circumstances must indicate that the statement is sufficiently reliable to allow its admission as substantive evidence although the defendant is unable to cross-examine the declarant.[35]

Mr. Butters's statements bore sufficient indicia of reliability to satisfy Confrontation Clause concerns and allow their admission as substantive evidence at defendant's trial. The statements were voluntary, were made to relatives, and were uttered spontaneously and without prompting or inquiry. The statements incriminated Mr. Butters, as well as defendant. Furthermore, Mr. Butters had no motive to falsely implicate himself in criminal activities in statements made to members of his own family. Our determination that Mr. Butters's statements were likely admissible, nontestimonial evidence does not affect our determination that defendant's conviction must be reversed. As the strongest evidence in support of defendant's conviction—the official transcript of Mr. Butters's guilty plea—was improperly admitted, reversal is warranted regardless of the propriety of the admission of these statements.

Defendant also asserts that the trial court abused its discretion in refusing to redact the references to cocaine and killing a police officer in Mr. Butters's statements to his visitors. Defendant maintains that these references were more prejudicial than probative, and therefore, inadmissible pursuant to MRE 403. Although

---

[35] *Id.* at 672-673 (citations omitted), quoting *People v Poole,* 444 Mich 151, 165; 506 NW2d 505 (1993).

these references were unnecessary and irrelevant to defendant's trial, the references pertain to Mr. Butters alone and do not implicate defendant. Although the trial court improperly failed to exclude those references, defendant was not prejudiced by the failure. Accordingly, reversal is not warranted.

### C. "THE SCRIPT"

Defendant also challenges the admission into evidence over defense objection of a letter that Mr. Butters wrote and had delivered to defendant before his trial. The letter lists twenty-one questions and answers regarding the events of the alleged fleeing and eluding and assault. The letter, commonly referred to as a "script," was found by defendant's roommate and delivered to the police. The script was introduced at Mr. Butters's trial to impeach defendant's testimony, and was admitted at defendant's trial to establish the falsity of that testimony. Defendant maintained that she testified consistently with the script because the script accurately detailed the events on the night of the incident.

Even under its broadest definition, this script is not testimonial evidence. The letter is an informal, out-of-court statement never intended to be available for use at trial. The script was clearly admissible under *Roberts*. Mr. Butters voluntarily and without instigation wrote the letter to his girlfriend while awaiting his trial. The letter equally incriminates both defendant and Mr. Butters in a plan to present false testimony at his trial. As the evidence bore sufficient indicia of reliability, the trial court properly admitted the script.

### III. FAILURE TO ENDORSE AN ADDITIONAL WITNESS

Finally, defendant maintains that the trial court abused its discretion in failing to endorse an additional

defense witness after the jury had been selected and sworn, but before any trial testimony was taken. It appears from the record that the trial court's only reason for failing to endorse the additional witness was the late timing of the request. Defendant made no offer of proof in the trial court regarding this witness and her argument on appeal does not rely upon the witness's affidavit submitted with defendant's motion for new trial.

A trial court, may, in its discretion, exclude witnesses and control the court proceedings.[36] Absent a showing of prejudice, defendant cannot establish that the trial court abused its discretion.

Reversed and remanded. We do not retain jurisdiction.

KELLY, J., concurred.

HOEKSTRA, P.J., *(dissenting).* I respectfully dissent from the decision of the majority reversing defendant's conviction in this case.

Although I agree with the majority that the trial court erred in admitting the transcript of accomplice Bobby Butters's guilty plea to subornation of perjury, I conclude, unlike the majority, that the error was harmless.

Relying on the language of *People v Anderson (After Remand),* 446 Mich 392; 521 NW2d 538 (1994), for the test for preserved constitutional error, the majority concludes that "[w]hen quantitatively assessed in this case, there is clearly more than a reasonable probability that the transcript of Mr. Butters's guilty plea to

---

[36] See MCL 768.29; MCR 6.414(A); *People v Taylor,* 252 Mich App 519, 522; 652 NW2d 526 (2002) ("A trial court has broad discretion in regard to controlling trial proceedings.");

subornation of perjury contributed to defendant's conviction of perjury. . . . In fact, this transcript established an element of the charged offense—the falsity of defendant's previous testimony." *Ante* at 672-673.

In *Anderson,* our Supreme Court quoted from the United States Supreme Court's decisions in *Arizona v Fulminante,* 499 US 279; 111 S Ct 1246; 113 L Ed 2d 302 (1991), and *Chapman v California,* 386 US 18; 87 S Ct 824; 17 L Ed 2d 705 (1967), concerning the federal test for harmless constitutional error. *Anderson, supra* at 404-407. However, after *Fulminante* and *Chapman* the United States Supreme Court has further explained the proper test for determining whether constitutional error is harmless. In *Neder v United States,* 527 US 1; 119 S Ct 1827; 144 L Ed 2d 35 (1999), after noting the *Chapman* test, the Supreme Court clarified what was required to establish harmless constitutional error:

> The erroneous admission of evidence in violation of the Fifth Amendment's guarantee against self-incrimination, see *Arizona* [*supra*], and the erroneous exclusion of evidence in violation of the right to confront witnesses guaranteed by the Sixth Amendment, see *Delaware v Van Arsdall* [475 US 673; 106 S Ct 1431; 89 L Ed 2d 674 (1986)], are both subject to harmless-error analysis under our cases. Such errors, no less than the failure to instruct on an element in violation of the right to a jury trial, infringe upon the jury's fact finding role and affect the jury's deliberative process in ways that are, strictly speaking, not readily calculable. *We think, therefore, that the harmless-error inquiry must be essentially the same: Is it clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error?* To set a barrier so high that it could never be surmounted would justify the very criticism that spawned the harmless-error doctrine in the first place: "Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." R.

Traynor, The Riddle of Harmless Error 50 (1970). [*Neder,
supra* at 18 (emphasis added.)]

In light of this statement, I conclude that the United
States Supreme Court recognized that the test articu-
lated in *Chapman*, which our Supreme Court applied in
*Anderson* and which the majority relied on in the
present case, is virtually unattainable, and restated the
test to require a more realistic determination, i.e.,
whether it is "clear beyond a reasonable doubt that a
rational jury would have found the defendant guilty
absent the error." *Neder, supra.* Further, I note that our
Supreme Court has acknowledged the *Neder* test for
harmless constitutional error. *People v Mass*, 464 Mich
615, 640 n 29; 628 NW2d 540 (2001).

Answering the question: "Is it clear, beyond a reason-
able doubt, that a rational jury would have found
defendant guilty of perjury absent the error of introduc-
ing into evidence the transcript of Butters's guilty plea
to subornation of perjury?" I conclude that the error in
this case was harmless. The testimony of the jail guards
established that Butters admitted that he was the
driver of the pickup truck that fled from the police on
the night in question. Like the plea transcript, this
testimony established that defendant's trial testimony
was false. In addition, other testimony corroborated
that Butters was the driver of the fleeing pickup truck.
Rose York, the owner of the bar from which defendant
and Butters left just before the incident in question,
testified that she knows both defendant and Butters
and observed them leave alone in separate vehicles,
Butters driving his pickup truck and defendant driving
her station wagon. Further, the "script" that Butters
gave to defendant before his trial essentially laid out the
substance of what later proved to be defendant's testi-
mony. Given this evidence, I believe that it is clear

beyond a reasonable doubt that a rational jury would have found defendant guilty of perjury absent the error of introducing into evidence Butters's guilty plea transcript.

In all other respects, I concur with and join the majority. However, because I conclude that the only error in this case was harmless, I would affirm.