PEOPLE v WALKER

Docket No. 250006. Submitted December 14, 2004, at Detroit. Decided March 24, 2005, at 9:00 a.m. Leave to appeal sought.

Alvin Walker, Jr., was convicted by a jury in the Oakland Circuit Court of felonious assault, possession of a firearm by a felon, and two counts of possession of a firearm during the commission of a felony following a domestic assault against his girlfriend. The victim did not appear at trial. Pursuant to a pretrial motion, however, the court, Colleen A. O'Brien, J., admitted the victim's statements to a neighbor, including a handwritten transcription of those statements made by the neighbor, under MRE 803(2) as excited utterances. The defendant appealed.

The Court of Appeals *held*:

1. The trial court did not abuse its discretion in admitting the victim's statements under the MRE 803(2) hearsay exception for excited utterances. For the exception to apply, there must be a startling event and the resulting statement must have been made while the declarant was under the excitement caused by that event. Although the amount of time that passes between the event and the statement is important in determining whether the declarant was still under the stress of the event, there is no express time limit for an excited utterance. MRE 803(2) focuses on the lack of capacity to fabricate, rather than the lack of time to fabricate. The evidence showed that the victim's statements were the result of a startling event. She was repeatedly beaten throughout the night and escaped by jumping from a second-story balcony. Nothing suggested that the time involved before she made the statements gave rise to reflective fabrication. Furthermore, the victim's statements were not testimonial hearsay barred by *Crawford v Washington*, 541 US 36 (2004).

2. The defendant was not denied a fair trial by the prosecutor's comments that the victim was absent from the trial because she was frightened of the defendant. While the prosecutor's argument may have been objectionable in isolation, the defendant's counsel did not object, but argued that the victim was absent because her allegations were false and she feared the consequences of making a false police report. The prosecutor emphasized that the jury should base its decision on the evidence, and the trial court

instructed the jury that the attorneys' arguments were not evidence and the jury should not let sympathy or prejudice influence its decision.

3. The defendant was not denied the effective assistance of counsel. The defendant has not shown that his counsel was deficient in failing to locate the victim, whom the prosecution also could not locate, and the defendant's counsel used the victim's absence as a matter of trial strategy to bolster the defense theory that her allegations were false. Because the victim's statements were properly admitted under a hearsay exception, defense counsel was not ineffective for failing to advocate a futile or meritless position after the trial court ruled on their admissibility.

Affirmed.

COOPER, J., dissenting, concluded that the victim's statements were testimonial hearsay and the defendant had no opportunity to cross-examine her. Accordingly, the statements were inadmissible pursuant to *Crawford* and the persuasive analysis in *United States v Cromer*, 389 F3d 662 (CA 6, 2004). Because there was insufficient evidence without this testimonial hearsay, the defendant's convictions and sentences should be vacated.

EVIDENCE — HEARSAY — EXCITED UTTERANCES.

The hearsay exception for excited utterances focuses on the lack of capacity to fabricate, rather than the lack of time to fabricate; although the amount of time that passes between a startling event and the resulting statement is an important factor in determining whether the declarant was still under the excitement or stress of the event when the statement was made, there is no express time limit for a statement to qualify as an excited utterance (MRE 803[2]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David G. Gorcyca*, Prosecuting Attorney, *Joyce F. Todd*, Chief, Appellate Division, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

*Ronald D. Ambrose* for the defendant.

Before: NEFF, P.J., and COOPER and R. S. GRIBBS*, JJ.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

NEFF, P.J. Defendant appeals as of right his jury trial convictions of felonious assault, MCL 750.82; possession of a firearm by a felon, MCL 750.224f; and two counts of possession of a firearm during the commission of a felony, MCL 750.227b. Defendant was sentenced as an habitual offender, third offense, MCL 769.11, to concurrent prison terms of two to eight years for the felonious assault conviction and thirty-five months to ten years for the conviction of possession of a firearm by a felon, and to two consecutive prison terms of two years for the felony-firearm convictions. We affirm.

I

This case stems from a domestic assault in which defendant beat his live-in girlfriend repeatedly with a stick and threatened her with a gun. The couple had been living together for several years and had a son together. The victim told police that after the couple had an argument on the evening of October 18, 2002, defendant forced her to lie on the bed on her stomach while he beat her with white sticks on her back, buttocks, legs, and arms. He then pointed a handgun at her and told her he would "blow her back out" if she moved. The beatings continued until early the next morning. The victim escaped at approximately 9:00 a.m. by jumping from a second-story balcony while defendant was sleeping. She ran to the home of a neighbor, who called 911.

The police arrived within a few minutes. Because the victim was upset, the neighbor wrote out her statement of what happened. The victim accompanied the police to the couple's home, where the police found three white sticks and a handgun. Defendant was not at the home, but was located and arrested a short while later.

II

Defendant first argues that he was denied his right of due process and the right to confront witnesses by the admission of the victim's hearsay statements. Defendant contends that the trial court erred by admitting the statements under MRE 803(2), the hearsay exception for excited utterances.

The trial court's ruling regarding the admission of evidence is reviewed for an abuse of discretion. *People v Hine,* 467 Mich 242, 250; 650 NW2d 659 (2002); *People v Taylor,* 195 Mich App 57, 60; 489 NW2d 99 (1992). This Court will find an abuse of discretion only when an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling. *Id.*

A

Defendant argues that the admission of the victim's statements as excited utterances was improper because the statements were not made before the victim had the time and capacity to fabricate the statements. He argues that there was a two-hour delay from the time of the assault to the time of the statements, the victim fell asleep between the assault and her escape, and she had time to compose herself enough to jump from a second-story window, all of which support a conclusion that she had the capacity to fabricate the assault.

The prosecutor filed a pretrial motion to admit the victim's statements to the neighbor under MRE 803(2). The record indicates that following a hearing, the trial court granted the motion. We find no error in the admission of the victim's statements.

Under MRE 803(2), a hearsay statement is admissible if it is "[a] statement relating to a startling event

or condition made while the declarant was under the stress of excitement caused by the event or condition." There are two primary requirements for an excited utterance: (1) there must be a startling event, and (2) the resulting statement must have been made while the declarant was under the excitement caused by that event. *People v Smith*, 456 Mich 543, 550; 581 NW2d 654 (1998).

There is no express time limit for excited utterances. The rule focuses on the lack of capacity to fabricate, not the lack of time to fabricate. Although the amount of time that passes between the event and the statement is an important factor in determining whether the declarant was still under the stress of the event when the statement was made, it is not dispositive. The question is not strictly one of time, but of the possibility of conscious reflection. *Id.* at 551. The trial court's decision regarding whether the declarant was still under the stress of the event is given wide discretion. *Id.* at 552.

B

Here, all the circumstances support a finding that the victim's statements were the result of a startling event and constituted an excited utterance. According to the evidence, the victim was beaten throughout the night and escaped within two hours of the last beating. She jumped from a second-story balcony, ran to a neighbor's house, and asked her to call 911. According to the neighbor, the victim was injured and "crying and shaking and she seemed really upset, hurt." The 911 call was received at 9:02 a.m. and the first police officer arrived at the neighbor's home within five minutes; other officers arrived within fifteen to twenty minutes. According to the officers' testimony, the victim was

hysterical: she was scared, crying, highly upset, and shaking. There is nothing to suggest that the intervals between the assault, her escape, and the statements to the neighbor and the police gave rise to reflective fabrication. Accordingly, the determination was within the bounds of discretion, and the trial court properly admitted this testimony into evidence under MRE 803(2). *Smith, supra* at 550.

C

In response to our dissenting colleague, we first note that defendant's challenge in the trial court to the victim's statements was based on his contention that the facts did not support admission of the victim's statement to her neighbor under the hearsay exception for an excited utterance, MRE 803(2). His challenge based on the Confrontation Clause[1] is raised for the first time on appeal. Accordingly, it is arguable whether the issue raised and discussed by the dissent pursuant to *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177 (2004), and *United States v Cromer*, 389 F3d 662 (CA 6, 2004), is preserved for appellate review.[2] Nevertheless, we are unpersuaded that either *Crawford* or *Cromer* compels the result for which the dissent argues.

CRAWFORD

The dissent concludes that the victim's statements were inadmissible because they constitute testimonial hearsay under *Crawford*. The *Crawford* Court avoided

---

[1] US Const, Am VI.

[2] As an unpreserved issue, defendant's challenge is reviewed for plain error affecting his substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

any attempt to define "testimonial," admittedly creat-
ing interim uncertainty concerning the reach of its
holding, *Crawford, supra* at 68 n 10, and essentially
leaving the lower courts to decide whether particular
hearsay evidence is or is not "testimonial." We conclude
that the statements of the victim in this case do not
qualify as testimonial under the analysis and guidance
of *Crawford.*

In *Crawford,* the Court declined to set forth a "precise
articulation" of what constitutes "testimonial" hearsay
for purposes of the Confrontation Clause, despite ac-
knowledging various formulations of a definition. *Id.* at
52. The bar imposed on testimonial hearsay is therefore
unsupported by any explicit rule beyond (1) the Court's
pronouncements that "*ex parte* testimony at a prelimi-
nary hearing" and "[s]tatements taken by police officers
in the course of interrogations" are indisputably testimo-
nial, *id.,* and (2) the Court's concluding summary:

> Whatever else the term covers, it applies at a minimum
> to prior testimony at a preliminary hearing, before a grand
> jury, or at a former trial; and to police interrogations. These
> are the modern practices with closest kinship to the abuses
> at which the Confrontation Cause was directed. [*Id.* at 68.]

Even then, the opinion acknowledges that the term
"interrogation" is open to definition. *Id.* at 53 n 4.

Although statements to authorities routinely fall
within the category of statements made for the purpose
of the investigation of a crime and the "production of
testimony with an eye toward trial," *id.* at 56 n 7, that
is not always the case. And it does not accurately
characterize the majority of the statements in this
case.[3] This case involved a domestic assault and, as is

---

[3] Defendant challenges the victim's statements generally and does not
distinguish between her oral statements made to the neighbor, her

not uncommon in these cases, the complainant-victim was not available to testify against her assailant-boyfriend. The victim's statements were initially made to a disinterested female neighbor. The statements to the neighbor were spontaneous and could as justifiably be characterized as a plea for safety and protection as statements made for the investigation of a crime. It is unlikely that someone would jump from a second-story balcony and run to the home of a neighbor she did not know, all with an eye toward developing testimony for subsequent prosecution.

Justice Scalia's majority opinion in *Crawford* acknowledges that the language of the Confrontation Clause alone does not answer the question posed. *Id.* at 42-43. He engages in a lengthy discussion of the history of the right to confront one's accusers in support of his interpretation of the Confrontation Clause. Given the historical perspective of *Crawford*, and its recognition that "[p]olice interrogations bear a striking resemblance to examinations by justices of the peace in England," *id.* at 52, we cannot conclude that the victim's spontaneous statements in this case are akin to the testimonial hearsay barred by *Crawford*. In our view, *Crawford* is confined to the type of testimonial hearsay addressed by that case. We discern no holding or analysis in *Crawford* that would lead us to conclude that the victim's statements to her neighbor, and the repetition of her statements to responding police officers, were testimonial hearsay violative of the Confrontation Clause. Because her statements were nontestimonial hearsay, "it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law . . . ." *Id.* at 68. Michigan

---

written statement to the neighbor, and her subsequent statements to the police in the process of their investigation.

has well-developed hearsay law that provides a clear exception for excited utterances, and the victim's statements fit within the exception.

### CROMER

We also find the decision in *Cromer* unpersuasive within the context of this case. The narrow issue in *Cromer* was "whether the statements of a confidential informant to police are 'testimonial' in nature." *Cromer, supra* at 672. That issue is hardly comparable to the situation here involving the excited utterances of a victim of a violent crime who made statements to a neighbor and to police officers within hours of having been beaten and within moments of fleeing from her home by jumping off a second-story balcony.

Notwithstanding that *Cromer*'s facts and legal issue make that case distinguishable from this one, we are not prepared to extend the application of the expansive definition of testimonial hearsay adopted there to the excited utterance exception to the hearsay rule here. The *Cromer* opinion concludes, essentially, that *Crawford* eviscerates evidentiary rules governing the admission of hearsay statements except in the limited circumstance in which the wrongful conduct of the defendant is responsible for the inability to confront the witness, thus resulting in a forfeiture of the right to confrontation. See *id.* at 679. We do not read *Crawford* as establishing such a broad principle. As noted by the dissent, *post* at 550 n 14, we are not bound by decisions of lower federal courts, and we are not inclined to rely on *Cromer* to rewrite the rules of evidence.

The *Crawford* Court was careful not to dictate the contours of the Confrontation Clause bar to testimonial hearsay and refrained from undertaking a sweeping analysis of various factual predicates. The unusual

circumstances of this case bear out the wisdom of the
Court's restraint and the danger of preconceived blan-
ket classifications beyond those provided by the Court.

The discussion in *Cromer*, relied on by the dissent, is
precisely the type of sweeping analysis the *Crawford*
Court declined to "indulge in." While Justice Scalia
cited and relied on an article by Friedman,[4] *Crawford,
supra* at 61, the *Crawford* opinion did not adopt the
suggested broader framework and "rules of thumb"
from the Friedman article that the *Cromer* court readily
incorporated into its analysis, *Cromer, supra* at 673.
There was no greater justification in *Cromer* for such a
sweeping analysis than existed in *Crawford*, and there-
fore the *Cromer* mandates are hardly persuasive au-
thority for interpreting the *Crawford* Court's view of
testimonial hearsay.

Although the United States courts of appeals have
struggled with the definition of "testimonial hearsay"
following the decision in *Crawford, United States v
Hendricks*, 395 F3d 173, 180 (CA 3, 2005), their hold-
ings leave no doubt that the expansive view of testimo-
nial hearsay adopted in *Cromer* is not universal. We find
the restraint exercised by these courts in keeping with
the tenor of *Crawford*.

In *Leavitt v Arave*, 383 F3d 809, 830 (CA 9, 2004), the
court found no violation of the Confrontation Clause by
the admission of a murder victim's statements to the
police regarding her suspicions and the identity of a
prowler the night before her death. The court noted
that the victim had

> been severely frightened on the night before her death by a
> prowler, who tried to break into her home. In a great state

---

[4] Friedman, *Confrontation: The search for basic principles*, 86 Geo L J
1011 (1998).

of agitation, she called the police and spoke to dispatchers and to police officers. Among other things, she said that she thought the prowler was Leavitt, because he had tried to talk himself into her home earlier that day, but she had refused him entry. [*Id.*]

In addressing the recent holding in *Crawford*, and the examples given there of testimonial hearsay, the court noted:

> We do not think that Elg's statements to the police she called to her home fall within the compass of these examples. Elg, not the police, initiated their interaction. She was in no way being interrogated by them but instead sought their help in ending a frightening intrusion into her home. Thus, we do not believe that the admission of her hearsay statements against Leavitt implicate "the principal evil at which the Confrontation Clause was directed[:] . . . the civil-law mode of criminal procedure, and particularly its use of *ex parte* examinations as evidence against the accused." [*Leavitt, supra* at 830 n 22, quoting *Crawford, supra* at 50.]

Similarly, while acknowledging that the discussion was dictum, the court in *Mungo v Duncan*, 393 F3d 327, 336 n 9 (CA 2, 2004), offered an analysis of various statements at issue under *Crawford*:

> Although the word "interrogation" can include any asking of questions, the first meaning listed (for "interrogate") in *Webster's Third New International Dictionary* is "to question typically with formality, command, and thoroughness for full information and circumstantial detail." *Webster's Third New International Dictionary* 1182 (1976). We believe the Supreme Court intended this more limited meaning, which is more consistent with the other types of testimonial statements the Court mentioned.
>
> Several statements made by Arthur to the police were admitted at Mungo's trial. The first group were the responses to a series of investigatory and hot-pursuit questions, including whether "[t]hose guys running" were the

ones who shot Arthur, whether Arthur knew where they were going, and, upon overtaking them, whether they were the shooters. Again after Mungo and Stewart had been taken into custody, the police asked Arthur as to each whether this was the person who had shot him. When Arthur answered yes as to each of the two, Officer Cavallo pressed for clarification, "I need to know exactly who shot you," to which Arthur responded, "The guy in gray [Mungo]," and explained, "They tried to rob me."

As for the answers to the early questions, delivered in emergency circumstances to help the police nab Arthur's assailants, we doubt that these were of the type of declarations the Court would regard as testimonial. As for the final statement, however, made after Mungo and Stewart had been caught, and after Arthur had confirmed that they were the men who shot him, specifically that it was Mungo who shot the gun and that the motive was robbery, this statement seems to have been made in greater formality with a view to creating a record and proving charges. It seems more likely to fall within the category the Court described as testimonial.

*The Supreme Court declined to attempt any precise definition of "testimonial," wisely sensing that the issue was complex and that the exact rule should gradually emerge in light of cumulative experience.* We offer these reflections in the hope that they may assist courts to work gradually, case by case, toward a functional understanding of the term. [Emphasis added.]

The sweeping analysis in *Cromer* is also not without conflict at the federal district court level. See, e.g., *United States v Savoca*, 335 F Supp 2d 385, 392-393 (SD NY, 2004):

Although the *Crawford* Court explicitly stated that the proffered list of "testimonial statements" was not exhaustive, all of the examples provided contain an "official" element. While the statements may or may not have been sworn, each example was made to an authority figure in an

authoritarian environment. This element of officiality appears to be the hallmark of a "testimonial statement."

Given these opposing views concerning the interpretation of *Crawford*'s bar on testimonial hearsay, it would be premature, if not erroneous, to adopt the all-encompassing, expansive view set forth in *Cromer* to govern in Michigan. This crucial area of law should be permitted to evolve in accordance with the factual circumstances presented, as the *Crawford* Court so wisely envisioned.

III

Defendant argues that he was denied his right to a fair trial by the prosecutor's misconduct in closing argument. Defendant failed to object to the alleged misconduct, and we find no plain error affecting defendant's substantial rights. Absent an objection, defendant must show plain error that affected his substantial rights, i.e., that the error was outcome determinative. *Carines, supra* at 763-764; *People v Rodriguez*, 251 Mich App 10, 32; 650 NW2d 96 (2002). A reviewing court should reverse only if the defendant is actually innocent or the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 24; *Carines, supra* at 763.

Claims of prosecutorial misconduct are reviewed case by case. *Rodriguez, supra* at 30; *People v Kelly*, 231 Mich App 627, 637; 588 NW2d 480 (1998). A prosecutor is generally given great latitude to argue the evidence and all inferences relating to the prosecutor's theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). A prosecutor's comments must be judged in the context of the prosecution and defense theories. *Id.* at 283-286; *Rodriguez, supra* at 30.

Defendant argues that the prosecutor appealed to the jury's sympathy in arguing that the reason the victim failed to appear for trial was that she was "scared to death of the defendant." A prosecutor may not appeal to the jury to sympathize with the victim. *People v Watson,* 245 Mich App 572, 591; 629 NW2d 411 (2001); *People v Wise,* 134 Mich App 82, 104; 351 NW2d 255 (1984).

In closing argument, the prosecutor stated:

> By now all of you should know, should have a pretty good understanding of, of why [the victim] was not here at trial. It's patently obvious that she's scared to death of the defendant. She's so scared she endured a year of abuse, a year of abuse with saying nothing, nothing at all. If she's willing to put up with that, she's not willing to come in and face him and accuse him of it.
>
> Please keep this in mind, we don't pick the victim. We don't pick the victims, the defendant does. Defendant picked [the victim] for a reason. He picked [the victim] because he can know that he can count on her failing to appear.
>
> But, [the victim's] failure to appear does not excuse the defendant's actions. This case is not about [the victim]. It's not about what [the victim] did or did not do. It's about Alvin Walker. It's about the defendant. It's about what he did to [the victim].

The prosecutor went on to summarize the evidence of defendant's actions.

In closing argument, defense counsel also addressed the issue of the victim's absence at trial, positing that she was absent because her report of these events was false, and she was afraid of the consequences of recanting her story and having made a false report to the police. In concluding his argument, defense counsel asked that the jury take into consideration that the victim did not show up for trial. Further, defense counsel argued that the prosecutor's suggestion that

the victim did not appear because she was scared was not believable, but if the jury believed the prosecutor's reasoning, it should convict defendant.

In rebuttal, the prosecutor responded to defense counsel's argument. The prosecutor stated that there was no motive for the victim to fabricate this story, but the jury should base its decision on the evidence:

> The issue is really not whether she's here or not. I think you're all savvy enough to understand why she's not here.
>
> But, the question before you should be did I produce beyond a reasonable doubt from this witness and the documents and the photographs that the defendant committed this crime.

We find no error requiring reversal. While the prosecutor's argument may be objectionable taken in isolation, considered in context, and in light of defense counsel's argument and theory, we cannot conclude that any objectionable argument unduly prejudiced defendant. *Watson, supra* at 591-592; *Wise, supra* at 104. The victim's potential absence from trial and the possible recantation of her accusations were raised in the prosecutor's opening statement. When the prosecutor again raised these issues in his closing argument, defense counsel had the opportunity to object to argument on this issue, but did not do so. Defense counsel instead used this argument to bolster the defense theory that the victim's allegations were false and that she did not appear for that reason. We cannot conclude that the prosecutor's argument was an improper appeal to the jury's sympathy for the victim that prejudiced defendant to the extent that reversal is required. *Watson, supra* at 591-592. Defendant has not shown that an instruction could not have cured any error. *Id.* at 586; *Rodriguez, supra* at 30. Moreover, the prosecutor emphasized that the jury should base its decision on the

evidence, and the court likewise instructed the jury that the attorneys' arguments were not evidence and that the jury should not let sympathy or prejudice influence its decision. *Watson, supra* at 592.

IV

Defendant argues he was denied the effective assistance of counsel by counsel's failure to secure the victim's presence as a witness at trial and by his failure to object to the admission of the hearsay evidence of the written statement taken from the victim by her neighbor. We disagree.

To establish ineffective assistance of counsel, defendant must show (1) that his trial counsel's performance fell below an objective standard of reasonableness and (2) that defendant was so prejudiced that he was denied a fair trial, i.e., that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *People v Toma,* 462 Mich 281, 302-303; 613 NW2d 694 (2000). Defendant must overcome a strong presumption that defense counsel's action constituted sound trial strategy. *Id.* at 302. Because defendant did not move for a *Ginther*[5] hearing, this Court's review is limited to mistakes apparent on the record. *Rodriguez, supra* at 38.

With regard to securing the victim's presence at trial, defendant has failed to show prejudicial error. *Toma, supra* at 302-303. Although defense counsel sought to have the victim present, the record indicates that neither the prosecution nor the defense could locate her at the time of trial. Defendant has not shown that counsel's performance was deficient in failing to locate a missing witness. Further, as noted previously, defen-

---

[5] *People v Ginther,* 390 Mich 436, 443, 212 NW2d 922 (1973).

dant used the victim's absence as a matter of trial strategy to bolster his theory that the allegations were false. *Id.* at 302. Finally, as the prosecutor points out, defense counsel could have presented his theory of consent[6] through testimony from defendant; however, defendant failed to show up for the third day of trial, precluding counsel from pursuing this avenue. Given these circumstances, defendant has failed to show that the victim's presence would have resulted in a different outcome.

Because we found no error in the admission of the victim's statements, defendant's claim that counsel was ineffective for failing to object to the victim's written statement must fail. *Rodriguez, supra* at 38. The trial court had ruled on the admissibility of the victim's statements. Counsel is not ineffective for failing to advocate a futile or meritless position. *People v Snider,* 239 Mich App 393, 425; 608 NW2d 502 (2000).

Affirmed.

R. S. GRIBBS, J., concurred.

COOPER, J. (*dissenting*). I respectfully dissent from the majority opinion of my colleagues. I would find that the admission of the complainant's several statements to her neighbor and police officers violated defendant's Sixth Amendment right to confront the witnesses against him. As the remaining evidence against defendant was weak at best, I would vacate defendant's convictions and sentences.

I cannot agree with the majority's conclusion that the trial court properly admitted testimony regarding the complainant's statements as excited utterances

---

[6] The defense theorized that the couple engaged in the beatings as sexual activity and that they were consensual.

under MRE 803(2). These statements are testimonial
hearsay and defendant had no opportunity to cross-
examine the complainant. Accordingly, the statements
are inadmissible, pursuant to *Crawford v Washington*.[1]
In *Crawford*, the United States Supreme Court found
that testimonial hearsay statements of witnesses
against the accused who are unavailable to testify at
trial are inadmissible when there was no prior oppor-
tunity for cross-examination.[2] "The *Crawford* Court
intentionally '[left] for another day any effort to spell
out a comprehensive definition of "testimonial." ' "[3]
However, the Court did provide guidance in determin-
ing whether a statement is testimonial:

> The text of the Confrontation Clause . . . applies to "wit-
> nesses" against the accused—in other words, those who
> "bear testimony." 1 N. Webster, An American Dictionary of
> the English Language (1828). "Testimony," in turn, is typi-
> cally "[a] solemn declaration or affirmation made for the
> purpose of establishing or proving some fact." *Ibid.* An
> accuser who makes a formal statement to government
> officers bears testimony in a sense that a person who makes
> a casual remark to an acquaintance does not. The constitu-
> tional text, like the history underlying the common-law
> right of confrontation, thus reflects an especially acute
> concern with a specific type of out-of-court statement.
>
> Various formulations of this core class of "testimonial"
> statements exist: "*ex parte* in-court testimony or its func-
> tional equivalent—that is, material such as affidavits,
> custodial examinations, prior testimony that the defendant
> was unable to cross-examine, or similar pretrial statements

---

[1] *Crawford v Washington*, 541 US 36; 124 S Ct 1354; 158 L Ed 2d 177
(2004). I do not agree with the majority that we must treat this challenge
as unpreserved. *Crawford* had yet to be determined at the time of
defendant's trial and, therefore, could not be raised below.

[2] *Id.* at 61-62, 68-69.

[3] *People v Shepherd*, 263 Mich App 665, 674; 689 NW2d 721 (2004),
quoting *Crawford, supra* at 68.

that declarants would reasonably expect to be used prosecutorially," Brief for Petitioner 23; "extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions," *White v. Illinois*, 502 U.S. 346, 365, 112 S.Ct. 736, 116 L.Ed.2d 848 (1992) (Thomas, J., joined by Scalia, J., concurring in part and concurring in judgment); "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," Brief for National Association of Criminal Defense Lawyers et al. as *Amici Curiae* 3. These formulations all share a common nucleus and then define the Clause's coverage at various levels of abstraction around it. Regardless of the precise articulation, some statements qualify under any definition—for example, *ex parte* testimony at a preliminary hearing.[4]

The majority reasons that the complainant's statements were nontestimonial as they were "spontaneous." They assert that, as the complainant was agitated, she did not intend to bear testimony against defendant. However, this is an improper analysis to determine whether the complainant's statements were testimonial in nature; it is merely a reliability analysis in disguise. Determining whether a statement is testimonial in nature based on the declarant's state of mind is as amorphous as the reliability test of *Ohio v Roberts*,[5] which was partially abrogated by the *Crawford* Court.[6] Furthermore, the majority's specific determination that a "spontaneous" statement is rendered nontestimonial was rejected in *Crawford*.[7]

---

[4] *Crawford, supra* at 51-52.

[5] *Ohio v Roberts*, 448 US 56; 100 S Ct 2531; 65 L Ed 2d 597 (1980).

[6] *Crawford, supra* at 68-69.

[7] See *id.* at 58 n 8 (criticizing a prior opinion regarding the exception for spontaneous declarations as "[i]t is questionable whether testimonial statements would ever have been admissible on that ground in 1791...").

The majority ignores *Crawford* by allowing a hearsay exception to trump a defendant's constitutional right of confrontation. The *Crawford* Court clearly intended that the Sixth Amendment right of confrontation would take precedence over hearsay exceptions where testimonial statements are involved. The *Crawford* Court noted that, historically, "there is scant evidence that exceptions were invoked to admit *testimonial* statements against the accused in a *criminal* case."[8] The one hearsay exception under which testimonial statements could possibly be admitted is the dying declaration.[9] The hearsay exceptions allowing for the admission of nontestimonial statements do not extend to testimonial statements. The "[i]nvolvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse . . . . *This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.*"[10] The intent of the United States Supreme Court is plain—evidentiary rules cannot be used to violate a defendant's constitutional right to confront the witnesses against him.[11] However, this is exactly what the majority opinion allows.

The complainant's statements to the police officers and her written statement dictated to her neighbor are

---

[8] *Id.* at 56 (emphasis in original).

[9] *Id.* at 56 n 6.

[10] *Id.* at 56 n 7 (emphasis added).

[11] The *Crawford* Court made this strong assertion with regard to the federal rules of evidence. The federal rules are a congressional act and, therefore, have more force than the Michigan rules of evidence. Our mere court rules are promulgated by four justices of the Michigan Supreme Court, not by the elected legislative body. See *People v Stevens,* 461 Mich 655, 666 n 10; 610 NW2d 881 (2000).

clearly inadmissible testimonial hearsay under *Crawford*. Regardless of the complainant's state of mind, it would be evident to any reasonable person that her written and verbal statements to police officers accusing defendant of abuse would be used to prosecute defendant. The complainant not only recounted her story to the police officers, both verbally and in writing, but she also allowed pictures to be taken of her injuries and took the officers to her home to inspect the alleged crime scene. Her statements were clearly taken by the officers as part of their investigatory function, a fact which would have been obvious to the complainant. Therefore, the statements were clearly inadmissible testimonial hearsay.[12]

I would also find that the complainant's statements to her neighbor are inadmissible testimonial hearsay. In *United States v Cromer*,[13] the Sixth Circuit provided a more comprehensive definition of "testimonial."[14] In *Cromer*, the Sixth Circuit adopted the definition of "testimonial" proposed by Professor Richard Friedman of the University of Michigan Law School:

> Professor Friedman . . . urges a broader definition of "testimonial" that would include any statement "made in circumstances in which a reasonable person would realize that it likely would be used in investigation or prosecution of a crime." . . . Based on his proposed definition, Friedman offers five rules of thumb:

---

[12] *Crawford, supra* at 53.

[13] *United States v Cromer*, 389 F3d 662 (CA 6, 2004).

[14] Although decisions of lower federal courts are not binding on this Court, they are persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004). An opinion of the Sixth Circuit Court of Appeals is especially persuasive where, as here, it interprets a federal constitutional right for which the Supreme Court has provided minimal guidance. See, e.g., *Abdur-Ra'oof v Dep't of Corrections (On Remand)*, 221 Mich App 585, 588-589; 562 NW2d 251 (1997).

"A statement made knowingly to the authorities that describes criminal activity is almost always testimonial. A statement made by a person claiming to be the victim of a crime and describing the crime is usually testimonial, whether made to the authorities or not. If, in the case of a crime committed over a short period of time, a statement is made before the crime is committed, it almost certainly is not testimonial. A statement made by one participant in a criminal enterprise to another, intended to further the enterprise, is not testimonial. And neither is a statement made in the course of going about one's ordinary business, made before the criminal act has occurred or with no recognition that it relates to criminal activity."

\* \* \*

We find the definition of "testimonial" proposed by Professor Friedman to be both well-reasoned and wholly consistent with the purpose behind the Confrontation Clause. . . .

. . . As explained by Professor Friedman, . . . the broader definition "is necessary to ensure that the adjudicative system does not effectively invite witnesses to testify in informal ways that avoid confrontation."[15]

Based upon the guidance provided in *Crawford* and the definition of "testimonial" adopted in *Cromer,* I would find that the complainant's statements describing the previous evening's events to her neighbor are inadmissible testimonial hearsay. The complainant told her neighbor about the alleged assault after securing her neighbor's cooperation in contacting the police. It is

---

[15] *Cromer, supra* at 673-674, quoting Friedman & McCormack, *Dial-in testimony*, 150 U Pa L R 1171, 1240-1241 (2002), and Friedman, *Confrontation: The search for basic principles*, 86 Geo L J 1011, 1042-1043 (1998). In formulating its limited definition of "testimonial" in *Crawford,* the United States Supreme Court relied on Professor Friedman's amicus curiae brief and academic works regarding the Confrontation Clause. See *Crawford, supra* at 61.

clear that the complainant intended to "bear testimony against the accused" when she made these statements as "a reasonable person in the declarant's position would anticipate [her] statement being used against the accused in investigating and prosecuting the crime."[16] Certainly the officers responding to the scene would ask the homeowner to give her version of the events, which would include the narrative given by the complainant. Accordingly, I would find that the trial court abused its discretion in admitting these statements.

The majority rejects this reasoning, which is based upon case law of the Sixth Circuit Court of Appeals. The majority correctly notes that decisions of lower federal courts are not binding on this Court, but then proceeds to pick and choose among case law of the various circuits to reach its desired result. The majority first relies on the Third Circuit's decision in *United States v Hendricks*[17] for the sole purpose of noting the "struggle" of defining "testimonial." However, the court in *Hendricks* did not limit itself to a narrow definition of "testimonial." It analyzed each challenged statement under even the broadest definition suggested in *Crawford* and affirmed the defendant's convictions on a factual distinction.[18] The majority's reliance on *Leavitt v Arave*[19] and *Mungo v Duncan*[20] is also misplaced. In *Leavitt*, the Ninth Circuit considered the reliability of the challenged statements before considering whether they were testimonial in nature.[21] *Crawford* requires a court to consider a defendant's consti-

---

[16] *Cromer, supra* at 675.

[17] *United States v Hendricks*, 395 F3d 173 (CA 3, 2005).

[18] *Id.* at 182-183 & n 9.

[19] *Leavitt v Arave*, 383 F3d 809 (CA 9, 2004).

[20] *Mungo v Duncan*, 393 F3d 327 (CA 2, 2004).

[21] *Leavitt, supra* at 830.

tutional right of confrontation before reliability. Although the court in *Leavitt* did adopt the narrowest definition of "testimonial" provided in *Crawford*, it did so without any analysis or discussion. The court's limited treatment of a major constitutional issue was relegated to a footnote.[22] Similarly, the Second Circuit in *Mungo* declined to even apply *Crawford* to the challenged statements, finding that *Crawford* did not have retroactive effect.[23] The court's discussion, which was specifically referred to as dicta, was again relegated to a footnote.[24] If we are to look to these federal cases for their persuasive value, reliance on *Cromer* is certainly more appropriate. Unlike *Cromer*, these other cases give a perfunctory review of the issue before defining "testimonial," and give the reliability of statements precedence over the constitutional rights of the accused in violation of *Crawford*.

Absent the complainant's statements regarding the alleged assault, there is insufficient evidence to sustain defendant's convictions. The police officers and neighbor observed bruising on the complainant's buttocks, the back of her neck, and her right eye. The complainant had difficulty standing upright and descending to sit in a chair, and was walking "gingerly." Without the complainant's statements, however, it is impossible to ascertain whether these injuries resulted from the alleged assault, her alleged jump from a second-story window, or any other factual scenario. Inside defendant's master bedroom, police officers recovered a handgun near the headboard and three white sticks from the bed. Again, without the complainant's statements, there is no evidence tying these objects to any

---

[22] *Id.* at 830 n 22.

[23] *Mungo, supra* at 335-336.

[24] *Id.* at 336 n 9.

assault.[25] As the complainant's statements are necessary evidence to support defendant's convictions, I would find that his convictions and sentences must be vacated.

---

[25] I would further note that the complainant left her young son in the home when she claimed to have escaped to her neighbor's house. When defendant was arrested in his vehicle near the home, the complainant's son was with him.