# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

LARRY DOUGLAS SHELTON,

Defendant-Appellant.

UNPUBLISHED
July 7, 2016

No. 324191
Oakland Circuit Court
LC No. 2014-248956-FC

Before: RONAYNE KRAUSE, P.J., and JANSEN and STEPHENS, JJ.

PER CURIAM.

Defendant was convicted by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a), based on his sexual assault of his 12-year-old daughter, AJ. Defendant had given AJ a considerable amount of alcohol shortly before the assault. In addition to AJ's testimony, the evidence admitted at trial included significant statements AJ made following the assault to her mother, her cousin, and two nurses. Additionally, evidence was admitted that AJ's mother had gotten pregnant with AJ when she was 14 years old pursuant to a consensual sexual relationship with defendant, who had been 25 years old at the time. Defendant contended that there was no direct eyewitness evidence that a sexual assault had actually occurred. The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to 37 ½ to 75 years' imprisonment. Defendant appeals his conviction and sentence. We affirm.

Defendant first argues that he was denied the effective assistance of counsel because counsel failed to object to the testimony of AJ's mother and cousin and the two nurses regarding the statements AJ made to them about the assault. We disagree.

Defendant did not move for a new trial or make a properly supported[1] request for a *Ginther*[2] hearing, so this issue is unpreserved, and we review it for errors apparent in the record. *People v Lopez*, 305 Mich App 686, 693; 854 NW2d 205 (2014). Counsel is presumed to have been effective, and defendant bears the burden of showing otherwise by establishing that counsel's performance fell below an objective standard of reasonableness and a reasonable

---

[1] See MCR 7.211(C)(1)(a)(ii).

[2] *People v Ginther*, 390 Mich 436, 443; 212 NW2d 922 (1973).

-1-

probability that the proceedings would have had a different outcome if counsel had performed competently. *People v Vaughn*, 491 Mich 642, 669-671; 821 NW2d 288 (2012). Counsel cannot be ineffective for failing to pursue an action or strategy that would be futile or meritless. *People v Mitchell*, 454 Mich 145, 163-164; 560 NW2d 600 (1997); *People v Hawkins*, 245 Mich App 439, 456-457; 628 NW2d 105 (2001).

"'Hearsay' is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Generally, hearsay is not admissible unless it falls under an exception provided by the rules of evidence. MRE 802. The two exceptions relevant to the instant matter are the "excited utterance" exception under MRE 803(2), and the "for purposes of medical treatment" exception under MRE 803(4). We find all four of the complained-of witnesses' testimonies admissible under one or the other of these two exceptions; consequently, any objection made by counsel would have been meritless, so the failure to do so does not constitute ineffective assistance.

The principle underlying the excited utterance exception is that the declarant must be under such an emotional upheaval caused by a startling event that the declarant is incapable of consciously and calmly reflecting sufficiently to be able to lie about that event. *People v Smith*, 456 Mich 543, 550-551; 581 NW2d 654 (1998); *People v Straight*, 430 Mich 418, 423-425; 424 NW2d 257 (1988). Critically, the statement must be made while the declarant "was still under the influence of [the] overwhelming emotional condition," but there is no particular timing requirement otherwise. *Straight*, 430 Mich at 424-425. In contrast, the medical treatment exception is premised on the declarant's motive to tell the truth in order to receive proper medical care. *People v McElhaney*, 215 Mich App 269, 280; 545 NW2d 18 (1996). Particularly in cases of sexual assault, "a victim's complete history and a recitation of *the totality of the circumstances of the assault* are properly considered to be statements made for medical treatment." *People v Mahone*, 294 Mich App 208, 215; 816 NW2d 436 (2011) (emphasis added). The exception under MRE 803(4) explicitly includes statements regarding "the cause or external source" of a condition for which treatment is sought.

Defendant contends that AJ's statements to her mother and cousin could not be excited utterances because they were made "after the incident when [AJ] was transported" to safety away from defendant. We disagree. Furthermore, as an initial matter, it is beyond any dispute that a sexual assault is a sufficiently startling event, *Straight*, 430 Mich at 425; see also *People v Layher*, 238 Mich App 573, 583; 607 NW2d 91 (1999); and here, additionally, AJ testified that she woke up to discover defendant facing her "between [her] legs" and a sharp pain "like broken glass" in her "vaginal area," and defendant's penis was touching her "vaginal area." AJ testified that she was woken a second time by another sharp pain and that she noticed that defendant had gotten up and was walking behind the couch "fixing his belt." Clearly, this kind of traumatic experience would constitute a sufficiently startling event under MRE 803(2).

Defendant is accurate to the extent that AJ did not talk to her mother or cousin literally immediately upon waking. However, as noted, the touchstone of MRE 803(2) is not timing, but whether the declarant is actually still under the emotional influence of the startling event. See *People v Kowalak (On Remand)*, 215 Mich App 554, 557-559; 546 NW2d 681 (1996). Furthermore, escaping to safety does not necessarily dispel any such emotional influence. See, e.g., *People v Walker*, 265 Mich App 530, 534-535; 697 NW2d 159 (2005), vacated in part on

other grounds 477 Mich 856 (2006) (finding that the victim's statements to a neighbor were admissible under the excited utterance exception to the hearsay rule where the victim had escaped to safety after being beaten before making the statements). When AJ talked to her cousin, less than an hour after the assault, she was "just really crying, [and AJ's cousin] couldn't really understand her cause she was just crying . . . " The cousin's testimony regarding AJ's demeanor and the short amount of time that had transpired clearly indicate that AJ was still under the emotional stress of the assault, and there is nothing in the record to suggest that she had the capacity to fabricate any statements, and those statements certainly related to the circumstances of the startling occasion. AJ's statements to her cousin unambiguously satisfy the requirements of MRE 803(2).

AJ's statements to her mother were also admissible under MRE 803(2). AJ's mother picked her up from the home of defendant's girlfriend and spoke to AJ after she took a brief 45 minute nap; consequently, less than two hours had transpired. Although AJ's mother provided no testimony regarding AJ's demeanor when she made the statements, the evidence in the record indicates that AJ was still "tearful" several hours later when she arrived at the hospital. Again, timing is not dispositive. See *Smith*, 456 Mich at 552-553 (concluding that a statement made by a 16-year-old victim to his mother 10 hours after the sexual assault constituted an excited utterance in light of the circumstances preceding and surrounding the statement, which demonstrated that the victim was still overwhelmed by the stress of the event); *People v Draper*, 150 Mich App 481, 486; 389 NW2d 89 (1986), remanded on other grounds 437 Mich 873 (1990) (concluding that a statement made by a three-year-old victim one week after a sexual assault constituted an excited utterance under the circumstances). We find that had an objection been made, the trial court would not have clearly erred in finding that AJ made the statement to her mother while still overwhelmed by the emotional stress from the assault, and there is no evidence tending to suggest otherwise or that AJ had any capacity to fabricate the statement. Her statement to her mother constituted an excited utterance under MRE 803(2).

Both of the nurses testified that AJ made the statements describing the assault to them during the course of a medical examination. Both nurses testified that it was necessary for them to take AJ's medical history, including her account of the assault, in order to guide the treatment. The record indicates that AJ's statements to both nurses steered her care. AJ's statements to one nurse resulted in the hospital determining that a rape kit was necessary, which led to AJ's referral to Safe Therapeutic Assault Response Team (START). AJ's statements to the other nurse about the sexual penetration led to a subsequent pregnancy test, sexually transmitted disease (STD) testing, and gynecological physical exam. Her statements also dictated the proper follow up care she required. Consequently, AJ's statements to both nurses were unambiguously made for purposes of medical treatment. Defendant contends that because the nurses collected evidence for law enforcement, their testimony regarding AJ's statements was not admissible pursuant to MRE 803(4). Whether law enforcement was involved at some point is not dispositive. *People v Duenaz*, 306 Mich App 85, 96; 854 NW2d 531 (2014). AJ was brought to the hospital by her mother for the purpose of medical treatment and the police only became involved later. As such, the statements fell within the ambit of MRE 803(4).

As noted, because all of the above statements were admissible, defendant cannot establish that trial counsel was ineffective for failing to object to them.

Defendant next argues that the trial court erred by admitting other acts evidence in violation of MRE 403, which prohibits the admission of evidence that is otherwise relevant but the probative value thereof is substantially outweighed by a danger of unfair prejudice. We disagree.

We review a trial court's decision whether to admit evidence for an abuse of discretion, with the qualification that admitting inadmissible evidence is necessarily an abuse of discretion. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007). Evidence of other acts is ordinarily inadmissible to show propensity, *People v VanderVliet*, 444 Mich 52, 62-63; 508 NW2d 114 (1993), citing MRE 404(b); however, MCL 768.27a explicitly permits evidence of a defendant's prior uncharged criminal sexual conduct against a minor for any relevance consideration, including propensity. *People v Watkins*, 491 Mich 450, 487; 818 NW2d 296 (2012); *People v Pattison*, 276 Mich App 613, 618-19; 741 NW2d 558 (2007). MRE 403 remains applicable to evidence admissible pursuant to MCL 768.27a, but "because MCL 768.27a represents a clear public-policy choice to admit specific evidence to protect children from sexual predators," it should be applied exceptionally "sparingly." *People v Uribe*, 310 Mich App 467, 472-473; 872 NW2d 511 (2015). Our Supreme Court has explained several considerations that may lead a court to exclude other acts evidence under MRE 403 including;

> (1) the dissimilarity between the other acts and the charged crime, (2) the temporal proximity of the other acts to the charged crime, (3) the infrequency of the other acts, (4) the presence of intervening acts, (5) the lack of reliability of the evidence supporting the occurrence of the other acts, and (6) the lack of need for evidence beyond the complainant's and the defendant's testimony. [*Watkins*, 491 Mich at 487-488.]

Ultimately, "[a]n error in the admission or exclusion of evidence will not warrant reversal unless refusal to do so appears inconsistent with substantial justice or affects a substantial right of the opposing party." *Dobek*, 274 Mich App at 93.

Prior to trial, the prosecution filed proper notice of its intent to admit other acts evidence pursuant to MCL 768.27a, including[3] "[i]n the early months of 1999, Defendant, who was twenty-two years old [at the time], had sexual intercourse with [AK] who was unable to consent due to being approximately only thirteen years old. This act resulted in the birth of [AJ]." The prosecutor argues that this evidence was relevant because it supported AJ's credibility and showed "defendant's system of befriending young girls in order to have a sexual relationship with them." Defendant argues that this other act should have been excluded under MRE 403 because his relationship with AK was remote in time and because he contended that it was dissimilar to the charged conduct because it was actually consensual and not incestuous. Because defendant did not object at the time, the trial court did not evaluate the evidence under

---

[3] The prosecution also filed notice that that defendant was convicted of attempted CSC-I in November 2002. At trial, the victim did not appear. Although the prosecutor noted that she intended to cross-examine defendant regarding the circumstances of his previous CSC conviction, defendant did not testify and this incident was not mentioned at trial.

-4-

the MRE 403 balancing test but subsequently allowed it to come in through AJ's testimony and AK's testimony. The other acts evidence was also mentioned in the prosecutor's closing argument, and defense counsel's closing argument.

As stated previously, defendant was specifically charged with, and convicted of, violating MCL 750.520b(1)(a), which prohibits "sexual penetration with" a "person . . . under 13 years of age." In other words, defendant was *not* charged with violating any prohibition against sexual penetration accomplished by force or violence or otherwise against the victim's actual will. Leaving aside the fact that AK could not have legally consented at the time of defendant's relationship with her, whether or not she actually did—were we to accept that possibility at face value—is entirely irrelevant to the instant charge. Similarly, defendant was not charged with violating any prohibition against sexual penetration with a relative, so the fact that his relationship with AK was not incestuous is likewise irrelevant. In all legally relevant ways, the two acts were in fact highly similar. It is objectively accurate that the prior act took place 14 years previously, but considering defendant's incarceration and thus lack of opportunity for 10 of those intervening years to commit sexual assaults, we are unpersuaded that any temporal remoteness is particularly meaningful. Defendant properly does not attempt to dispute that his relationship with AK was admissible pursuant to MCL 768.27a, and we disagree that any good reason exists to exclude it under MRE 403. Consequently, the evidence was properly admitted and any objection from counsel would have been futile.

Defendant argues in his Standard 4 brief that there was insufficient evidence of sexual penetration to support his conviction of CSC-I. We disagree.

In reviewing a challenge to the sufficiency of the evidence, we give considerable deference to the jury's verdict and will reverse only if the evidence, when viewed in the light most favorable to the prosecution and drawing all reasonable inferences in favor of the verdict, could not have led a reasonable trier of fact to find all of the essential elements of the crime proven beyond a reasonable doubt. *People v Nowack*, 462 Mich 392, 399-400; 614 NW2d 78 (2000). The prosecution need not disprove every alternate theory. *Id*. at 400. All conflicts in the evidence must be resolved in favor of the prosecution. *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008). The elements of CSC-I pursuant to MCL 750.520b(1)(a) are sexual penetration with another person, and that other person being under 13 years of age. There is no dispute that the victim was under 13 years old at the time of the assault, so the only question is whether the prosecution submitted sufficient evidence of sexual penetration.

"'Sexual penetration' means sexual intercourse, cunnilingus, fellatio, anal intercourse, *or any other intrusion, however slight, of any part of a person's body* or of any object into the genital or anal openings of another person's body, but emission of semen is not required.'" MCL 750.520a(o) (emphasis added.) Evidence concerning sexual penetration is sufficient "where the circumstances of the assault and the graphic description of physical sensations strongly point to the achievement of penetration." *People v Hollis*, 96 Mich App 333, 337; 292 NW2d 538 (1980).

AJ did not remember substantial portions of the night because of her alcohol consumption, but she remembered waking up laying on the loveseat with defendant facing her "between [her] legs." She testified that she felt a sharp pain "like broken glass" in her "vaginal

-5-

area," and that defendant's penis was touching her "vaginal area." Her cousin testified that AJ told her she needed to be picked up because "she woke up and her dad was on top of her, which his penis was – she said that she woke and, to his penis in her vagina," and clarified that the words AJ had actually used were "her dad was on top of her . . . doing it to her." AJ's mother asked AJ, "did something happen or did he just try," to which AJ replied that "it happened, Mom, it happened," and that she woke up because her "vagina was hurting because [defendant] had his penis down there." One nurse testified that AJ told her that defendant had "put his privates in her privates." The other nurse asked AJ if there had been any "penetration in her vagina by a penis, and [AJ] said – yes," and AJ told her that when defendant was touching her, "he put his penis inside of [her]." During her physical examination of AJ she also noted a laceration on the "entrance to the vaginal opening" that was consistent with penetration, which, while not conclusive, was highly significant because injury was not always present in sexual assault victims. Therefore, AJ did not give direct testimony at trial that defendant penetrated her vagina with his penis, but the evidence strongly implies it, and four witnesses testified to statements AJ made regarding penetration.

Defendant essentially argues that the jury should have interpreted the evidence and relative credibility of the witnesses differently, which is completely contrary to the proper standard of review and role assigned to the jury. Even though AJ did not directly testify that penetration had occurred, the trier of fact was free to conclude that the witnesses recounting AJ's statements regarding penetration were credible. *People v Fletcher*, 260 Mich App 531, 561-562; 679 NW2d 127 (2004). Accordingly, there was sufficient evidence for a rational trier of fact to conclude that sexual penetration occurred.

Defendant next argues that the trial court violated his Constitutional rights by admitting the DNA evidence after the prosecutor failed to establish a legitimate chain of custody. We disagree. The prosecution must establish a chain of custody as a foundation to admitting real evidence, but the chain need not be perfect; rather, it need only establish "the absence of a mistaken exchange, contamination, or tampering" to a "reasonable degree of probability or certainty." *People v White*, 208 Mich App 126, 129-133; 527 NW2d 34 (1994). Any further "deficiency in the chain of custody goes to the weight of the evidence rather than its admissibility." *Id*. at 130-131.

Nichole Christensen, the forensic laboratory specialist with the Oakland County Sheriff's Office who collected evidence from AK's house, testified that she collected the samples from the couch on October 7, 2013, and turned them over to the Oakland County Property Room on October 8, 2013, at 11:22 a.m. According to Christensen, between the time she collected the samples and turned them into the property room, they had been itemized and labeled and were stored at the crime lab, a locked facility. Detective Shawn Werner testified that those samples were then sent to the Michigan State Police Crime Lab. Melinda Jackson, a forensic scientist with the Michigan State Police, testified that she received the three labeled swabs taken from the couch at the Crime Lab on April 23, 2014. Jackson could not account for where the samples were stored for the six months between the assault and her receipt, but there was no testimony that indicated that the samples ever left the property room before being sent to Jackson. Additionally, Jackson testified that the DNA could not "degrade regardless of how they're stored." Jackson testified that, as a result, no matter how the samples were stored before they arrived at her lab, the results of her analysis would not have changed.

Jackson also testified that she requested a known buccal swab from defendant in order to test for a match. Detective Werner testified that he collected a sample from defendant and transported it to the Crime Lab himself. Jackson testified that she received defendant's sample on June 10, 2014. According to Jackson, she sent the couch swab and defendant's DNA sample to the Northville DNA unit for examination. Erica Castor, an employee of the DNA Biology unit for the Michigan State Police Northville Laboratory, testified that she received both samples at the Northville DNA unit and that they had been stored according to the proper procedure proscribed by her lab. Castor testified that she tested the samples herself and that the couch swab was a "very strong match" to defendant's DNA.

Accordingly, the prosecution established that the sample used to compile a DNA profile for defendant was the same swab that an officer had collected from defendant and that the couch sample matched to defendant's DNA was the same swab that was collected from AK's living room on the day following the assault. Thus, there was a "reasonable degree of certainty" that the DNA samples tested were those collected from the couch and from defendant and the chain of custody was at least "substantially complete." *White*, 208 Mich App at 133. Moreover, the testimony that it did not matter how the samples were stored before they were tested established "the absence of a mistaken exchange, contamination, or tampering . . . to a reasonable degree of probability or certainty." *Id*. Any deficiency in the chain of custody, such as the six month window that the samples presumably sat in the property room, goes to the weight of the evidence rather than its admissibility. *Id*. at 130-131. Also significant is that defendant has not identified any alleged error, or put forth any evidence that there was a mistake in the testing of the DNA sample. Therefore, there was no plain error that affected defendant's substantial rights.

Defendant last argues that the prosecution filed an untimely notice to seek enhancement of sentence. We disagree.

To preserve a claim that a habitual offender notice was untimely filed, a criminal defendant must challenge the habitual offender notice in the trial court. *People v Marshall*, 298 Mich App 607, 625-626; 830 NW2d 414 (2012), judgment vacated in part on other grounds 493 Mich 1020 (2013). Here, not only did defendant fail to object at trial, but he "pled" to the habitual offender status and acknowledged his three prior convictions under oath. As a result, this issue is waived because by pleading to his habitual offender status, defendant waived his right to challenge the timeliness of the prosecutor's notice of intent to seek habitual offender enhancement. *People v Lannom*, 441 Mich 490, 491; 490 NW2d 396 (1992). Even assuming this issue is not waived, defendant was given proper notice of the potential enhanced sentence within the timeframe required by MCR 6.112(F) and MCL 769.13(1).

Affirmed.

/s/ Amy Ronayne Krause
/s/ Kathleen Jansen